No. 45,060

Eastborough Corporation, Inc., *Appellee*, v. City of Eastborough, *Appellant.*

(441 P. 2d 891)

Opinion filed June 8, 1968.

*Edward F. Arn,* of Wichita, argued the cause and *Richard F. Mullins, Milo M. Unruh, H. R. Kuhn, Louis W. Cates* and *Roger K. Wilson,* all of Wichita, were with him on the brief for appellant.

*C. Robert Bell,* of Wichita, argued the cause and *Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock, Joseph W. Kennedy* and *Robert L. Driscoll,* all of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a judgment enjoining the City of Eastborough from vacating a portion of a street.

In this case Eastborough Corporation, Inc., has no connection with the City of Eastborough, as the two names might imply. The president of the plaintiff corporation is a resident of Kalamazoo, Michigan, and has developed large apartment projects in Michigan, Illinois and Kansas. The plaintiff corporation acquired a tract of land adjoining the City of Eastborough, which tract is now located in the City of Wichita. The tract was platted as Lot 3, Block A, in Clayton addition to the City of Wichita. It was zoned by the Planning Commission of Wichita to authorize the construction of an apartment complex of 138 units with storage and parking facilities for 250 vehicles.

Eastborough is a third class city covering 260 acres and it is restricted to approximately 300 single-family dwellings. The streets within this city are narrow (18 feet wide exclusive of curb), winding and designed for light traffic.

The defendant city (Eastborough) was incorporated in 1937 and by reason of an error in laying out the town one of its streets, Willowbrook Road, cuts through the northwest corner of plaintiff's tract. That portion of the street lying in plaintiff's tract is outside of the city limits of Eastborough. Willowbrook Road comes from the west, curves north through the northwest corner of plaintiff's tract and continues north under the name of Stratford Street. For the purpose of clarity the area involved is shown by rough sketch appearing on the next page.

The defendant city adopted Ordinance No. 595 vacating a segment of Willowbrook Road including the triangular tract in Clayton Addition to the City of Wichita.

This ordinance, omitting the heading, legal description and the signatures, reads as follows:

.    .    .    .    .    .    .    .    .    .    .    .    .

"WHEREAS, it recently came to the attention of the governing body of the City of Eastborough that a small portion of the paved surface of Willowbrook Road between Drury Lane and Stratford was outside of the City limits and that it encroached upon private property lying outside said city limits; and at the point of a 'blind curve' thereon which is dangerous to travel; and

"WHEREAS, said portion of Willowbrook Road is located at a 'blind curve' and constitutes a hazard dangerous to travel; that to close, annul and discon-

tinue a small portion of said street would not interfere with the ingress and egress of the owners of city lots in said area; but that it would correct the existing error of having said portion of said city street encroaching upon private property; and would also eliminate a dangerous 'blind curve' thus promoting the public welfare and safety of the citizens of Eastborough and the public generally;

"Now, THEREFORE, BE IT ORDAINED by the governing body of the City of Eastborough, a Third Class City within Sedgwick County, Kansas:

"SECTION 1: It is hereby declared to be a public necessity, expediency and convenience and to be in the interest of the public welfare and safety to annul and discontinue a portion of Willowbrook Road lying between Drury Lane and Stratford Street at a point north of and at another point west of the lines where the presently-traveled portion encroaches upon private property not within the city limits of Eastborough.

"SECTION 2: That the portion of Willowbrook Road and Stratford to be annulled and discontinued as a street be described as follows:

. . . . . . . . . . . . . . . . .

"SECTION 3: That the Mayor of said city having caused a survey to be made,

be and he is hereby authorized to arrange for the necessary improvements, closing, and the erection of proper and sufficient warning signs, 'dead end' barriers and reflector signals.

"SECTION 4: This ordinance shall take effect and be in force from and after its publication once in 'The Democrat,' a newspaper designated as an official publication.

"APPROVED AND PASSED this 19th day of May 1966."

. . . . . . . . . . . . .

The plat of Clayton Addition provides for a twenty-five foot road to connect with Willowbrook Road at the northwest corner of plaintiff's tract. This twenty-five foot road encircles plaintiff's tract and connects with Kellogg Street on the south. Kellogg is a main east-west traffic way in Wichita and it passes within 300 feet of said tract. Since construction began on the apartment complex in June, 1966, access to the property has been limited to the Kellogg Street entrance on the south.

Three days after the plat of Clayton Addition became final Ordinance No. 595 was adopted by the City of Eastborough and barricades were installed. Within a month thereafter suit was filed by plaintiff corporation to enjoin the City of Eastborough from enforcing this ordinance and to obtain damages. The petition alleged the action of the city governing body in adopting the ordinance was arbitrary, unreasonable, capricious and *ultra vires*.

The case was tried and the lower court found the action of the governing body was arbitrary, unreasonable and capricious and that there was no substantial relation between the public safety and the action of the governing body. The ordinance was declared void and the city was enjoined from vacating the segment of road and from maintaining the barricades.

The judgment was not based upon a deficiency in the statute authorizing a third class city to vacate or discontinue a street when deemed necessary or expedient (K. S. A. 15-427). The judgment was not based upon a procedural defect in the enactment of the ordinance.

Therefore, the question before the court was limited to the reasonableness of the action taken by the governing body of the City of Eastborough. (*Arkenberg v. City of Topeka*, 197 Kan. 731, 421 P. 2d 213.)

The legislature, as the representative of the public, has plenary power over streets and highways, and as a general rule, full discretion as to opening, improving and vacating the same. A city when

authorized by act of the legislature is acting as an administrative arm of the legislature. (*Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625; *Riddle v. State Highway Commission*, 184 Kan. 603, 611, 339 P. 2d 301; *Gorrill v. City of Lawrence*, 196 Kan. 303, 411 P. 2d 704; *Grantham v. City of Topeka*, 196 Kan. 393, 411 P. 2d 634.)

When the action of the administrative arm of the legislature is within the general statutory authority granted and according to the procedures required the power of the court is limited to determining the reasonableness of such action. (*Arkenberg v. City of Topeka*, supra; *Bodine v. City of Overland Park*, 198 Kan. 371, 424 P. 2d 513.)

There is a presumption the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof. (*Moyer v. Board of County Commissioners*, 197 Kan. 23, 415 P. 2d 261.) In determining the reasonableness of the action a court may not substitute its judgment for that of the governing body and should not declare the action unreasonable unless clearly compelled to do so by the evidence. (*Arkenberg v. City of Topeka*, supra.)

The selection of a means to control and regulate traffic by a municipality is a governmental function under the police power and includes such things as prescribing one-way streets and barriers. In *Grantham v. City of Topeka*, supra, it was said:

". . . This court has consistently held that the legislature has plenary power over streets and highways, which may be exercised by the state, or delegated to local political subdivisions or municipalities in the manner prescribed. (Omitting citations.) Means selected by the state or a municipality in the control and regulation of traffic under the police power is a governmental function and includes such things as prescribing one-way through streets, establishing express thoroughfares, providing medial dividers, barriers, curbs, and other traffic-control devices, prohibiting left turns, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain streets and highways. (Omitting citations.)" (pp. 396, 397)

In *Gorrill v. City of Lawrence*, supra, it was determined that the authority granted by statute to vacate and close a street included the power to vacate a part of a street in order to improve and redirect traffic on a one-way street.

The distinctions inherent in the exercise of the police power and of the power of eminent domain were delineated in *Ray v. State Highway Commission*, 196 Kan. 13, 16, 23, 410 P. 2d 278, cert. denied 385 U. S. 820, 17 L. Ed. 2d 57, 87 S. Ct. 43. The action of the City of Eastborough in the present case was an exercise of the police power.

The evidence introduced at the trial indicates that the city council of Eastborough had considered the necessity and advisability of closing this curve as early as 1959 because of special hazards existing from vehicular traffic on this narrow street. This was seven years before Clayton Addition was platted. Traffic from Kellogg Street in Wichita was proceeding north through Eastborough to Willowbrook Road and after rounding this curve was proceeding almost directly through Eastborough to Douglas Street, which, like Kellogg Street, carries heavy east and west traffic in Wichita. Wichita is a large metropolitan city.

Other physical characteristics are present at this location which contribute to the traffic hazard. The narrow eighteen foot street is designed for residential traffic with lay back curbing. Residents have planted trees along this curve which have grown up to obscure the visibility of those travelling the curve. Since the streets in Eastborough are without sidewalks pedestrians and bicycles are required to travel in the streets.

An engineer employed by Eastborough in 1959 to evaluate traffic safety at this curve made two alternative recommendations (1) straighten out the curve connecting Willowbrook Road and Stratford Street or (2) vacate a small section of the street and erect barricades. The latter alternative adopted by Ordinance No. 595 has the effect of severing traffic at this point. Traffic now moves north on Stratford Street and west on Willowbrook Road. The effect also is to require traffic from Kellogg Street to take a more circuitous route through the City of Eastborough to reach Douglas Street.

Wichita and Eastborough have not entered into a joint planning program as provided in K. S. A. 12-716 and the defendant city was not consulted on the advisability of connecting the Clayton Addition road with Willowbrook Road. Members of the governing body of the defendant city testified their primary concern in adopting the ordinance was the safety and welfare of the residents of Eastborough and of the travelling public. It is significant the charge of arbitrary, unreasonable, capricious and discriminatory action does not come from the residents of Eastborough. The charge comes from the plaintiff whose apartment complex is located in the city of Wichita and who has ingress and egress to the property from a thoroughfare in Wichita.

In support of the lower court's judgment plaintiff-appellee cites

*Smith v. State Highway Commission,* 185 Kan. 445, 346 P. 2d 259, which case was discussed in *Brock v. State Highway Commission,* 195 Kan. 361, 404 P. 2d 934. As we view the present case it does not come within the rules of law which govern the taking of access rights in connection with the construction of roads and highways. Willowbrook Road was dedicated, paved and curbed prior to 1937. The action of the city council under Ordinance No. 595 was an exercise of the city's power of regulation and control of traffic upon its streets under the police power.

Plaintiff-appellee relies heavily upon a case from the state of Washington (*Yarrow Etc. v. Town of Clyde Hill,* 66 Wn. 2d 371, 403 P. 2d 49) which, although persuasive, is not controlling. We have examined the facts and circumstances presented in that case and find they differ in several important details from the facts presented in the present case. Plaintiff here has access to Kellogg Street in the City of Wichita where the apartment complex was constructed. A new addition, adjacent on the east to Clayton Addition, is being planned. This is not a case of Eastborough closing its streets to its neighbors. Various other streets are and will continue to be open to traffic between Wichita and Eastborough.

More persuasive foreign authority under facts similar to our case may be found in *Smith v. Gagliardi,* 144 N. Y. S. 2d 800 (N. Y. 1955), where it was held a street may be vacated and travel directed elsewhere when it is deemed necessary to subserve public convenience.

The change in traffic pattern put into effect by Ordinance No. 595 applies equally to the residents of Eastborough and to the general public.

The traffic engineer for the City of Wichita testified this curve is not dangerous when located in a residential area with posted speed limits of 25 and 30 miles per hour. However, he stated by current standards the City of Wichita would not build streets in a residential area as narrow as twenty-one feet, and he would not recommend directing traffic generated from an apartment complex with 138 family units onto a substandard street. He said that traffic safety on this particular curve where traffic from the apartment complex was designed to come and go, might be improved by making certain changes. His suggestions to the City of Eastborough included removal of trees and shrubbery, flattening the curve, painting traffic lanes, widening the roadway to provide left turn channels, widening the street to four lanes, installation of traffic signals and

grade separation. However, he concluded that grade separation would not be practical for a third class city because of the expense involved.

There can be no doubt from the record that if traffic from the apartment complex in Wichita is permitted access to the City of Eastborough on the bend of this curve traffic problems will immediately arise. Some of the engineer's suggested "improvements" may well become immediately necessary in the City of Eastborough. We believe that this was a factor properly considered by the governing body of Eastborough in adopting Ordinance No. 595.

A review of the evidence discloses there is a substantial relation between public safety in the control of traffic at this particular location and the enactment of Ordinance No. 595.

It is clear the city had the power and authority to carry out the proposal in question and its action was reasonable. The trial court was incorrect in substituting its judgment for that of the governing body.

The judgment granting injunctive relief against the city is therefore reversed.