CHRYSLER REALTY CORPORATION AND GLOVER MOTORS, INC.
v. NORTH CAROLINA STATE HIGHWAY COMMISSION

No. 7228SC550

(Filed 23 August 1972)

Eminent Domain § 2— construction of median strip — dead-ending of abutting street — exercise of police power

The construction of a median strip on the east-west highway abutting the front of plaintiffs' property so as to prevent direct access to and from the westbound lanes, and the dead-ending of one of two abutting north-south streets at its intersection with the

east-west highway were legitimate exercises of the police power for which plaintiffs are not entitled to compensation where plaintiffs still retain access to and from all abutting streets and highways.

APPEAL by plaintiffs from *Thornburg, Judge,* 28 February 1972 Session of Superior Court held in BUNCOMBE County.

This is an action by the plaintiffs, against the North Carolina State Highway Commission, seeking to recover damages for an alleged compensable taking resulting from the change of traffic flow in front of plaintiffs' property and for a change in access to certain portions of their property, all resulting from the construction of Highway Project 8.3023208.

Based on the stipulations of the parties, the trial judge made findings of fact in pertinent part as follows:

"1. The plaintiff, Chrysler Realty Corporation, was on the 13th day of November, 1969, the owner of a tract of land, as shown on Exhibit 1, located within the City of Asheville, and Glover Motors, Inc., the other plaintiff, had a long term lease with respect to the property. After acquiring the property, buildings were constructed on the property, access to which was had from Patton Avenue, which ran east and west in front of plaintiffs' property. Traffic traveling east on Patton Avenue could turn directly onto plaintiffs' property from Patton Avenue and traffic traveling west on Patton Avenue could turn directly from Patton Avenue onto plaintiffs' property by driving across the eastbound lane. There was also access to the property from Clingman Avenue.

2. That after the construction of the said project, Patton Avenue in front of plaintiffs' property was widened and a median or safety strip was erected which divided the highway, as shown on Exhibit 1, and which resulted in westbound traffic on Patton Avenue not being able to turn left directly onto the property as before construction. After construction, eastbound traffic on Patton Avenue had the same direct access to plaintiffs' property as before construction. However, a fence was erected, as part of the project, which prevents access from any direction onto West Haywood Street, said street having been deadended and no longer accessible to Patton Avenue, as shown on Exhibit 1."

West Haywood Street abutted plaintiffs' property on the west side and ran generally north and south at the point where it intersected Patton Avenue (Exhibit A).

"3. After construction of project, westbound traffic along Patton Avenue has access to plaintiffs' property by turning right, after going through the intersection of Patton and Clingman Avenues, following a circular road and onto Clingman Avenue and thence onto plaintiffs' property. Access from Clingman Avenue to plaintiffs' property remains the same after construction as it did before construction.

4. Plaintiffs' used car lot . . . is partially along Patton Avenue and West Haywood Street.

5. As part of this project, in order to provide access to West Haywood Road, Hilliard Street Extension was constructed and this extension runs off of Clingman Avenue, in the rear or south of plaintiffs' property (and not abutting it) and extends generally westerly until it connects with West Haywood Road. Traffic then can turn . . . right onto West Haywood Road and once on this road has access to plaintiffs' property. It is a greater distance to follow this route than it was going directly onto West Haywood Road from Patton Avenue, as was possible before construction.

6. There were controlled electrical traffic signals at the intersection of Patton and Clingman Avenues immediately prior to the construction and they existed immediately after construction. Immediately prior to construction of this project, westbound traffic on Patton Avenue could not turn left onto Clingman Avenue at the above-mentioned intersection and the same is true immediately after the construction of the project."

Based on its findings of fact the Court made the following pertinent conclusions of law:

"2. That the construction of the median strip dividing east and west bound lanes of traffic on Patton Avenue was a proper exercise of the police power and if any damage resulted from such exercise, which has not been shown, it is not compensable.

3. That after the construction of the project and the changes in the flow of traffic in front of plaintiffs' property and the change of a part of their access, plaintiffs still have full, reasonable, and convenient access to all portions of their property and therefore, no compensable taking exists.

4. Reasonable access to plaintiffs' property exists after construction and there is no compensable taking merely because of circuity of travel to reach a particular destination."

From a judgment dismissing the action, the plaintiffs appealed.

*H. Kenneth Lee and Herbert L. Hyde for plaintiff appellants.*

*Attorney General Robert Morgan and Deputy Attorney General R. Bruce White, Jr., and Assistant Attorney General Guy A. Hamlin for defendant appellee.*

HEDRICK, Judge.

Appellants contend the Court erred in "failing to conclude that plaintiffs' property abutted on West Haywood Street" and concluding as a matter of law "that the construction of the median strip dividing east-westbound lanes on Patton Avenue was a proper exercise of police power, and any damages resulting therefrom was not compensable." We do not agree.

The stipulations of the parties, found as facts by the trial judge (Exhibit 1, a map depicting the roads and highways surrounding plaintiffs' property) clearly show that West Haywood Street abuts plaintiffs' property on the West, Clingman Avenue abuts the property on the east, and plaintiffs' property is abutted on the north by Patton Avenue between Clingman Avenue and West Haywood Street.

We are referred by plaintiffs to G.S. 136-89.53, which in pertinent part provides:

"When an existing street or highway shall be designated as, and included within a *controlled-access facility,* the owners of the land abutting such existing street or highway, shall be entitled to compensation for the taking of, or injury to, their easements of access." (Our italics.)

Citing *Smith Co. v. Highway Comm.*, 279 N.C. 328, 182 S.E. 2d 383 (1971), plaintiffs argue that the dead-ending of West Haywood Street as part of the project, which included the construction of the median strip dividing the lanes of traffic on Patton Avenue and the extension of Hilliard Street from Clingman Avenue to West Haywood Street was such a taking or injury of their easement of access as entitles them to compensation within the meaning of G.S. 136-89.53. It seems clear that none of the streets abutting plaintiffs' property was or is a "controlled access" facility. The facts in *Smith Co. v. Highway Comm., supra,* are clearly distinguishable. There the plaintiffs owned a 13-acre tract of land abutting North Carolina Highway 191. Prior to the construction of the highway project, plaintiffs had an abutter's full right of access to the highway. The project complained of made Highway 191 a controlled access facility and completely fenced off all of plaintiffs' immediate access to the highway. After the construction of the project,

> ". . . the only available access to and from *any portion* of plaintiff's property and 'controlled-access' Highway 191 is by circuitous travel over residential streets. . . ." *Smith Co. v. Highway Comm., supra.*

The uncontroverted facts in the present case show that after the dead-ending of West Haywood Street at its intersection with Patton Avenue and the construction of the median, dividing lanes of traffic on Patton Avenue, the plaintiffs retained full right of access to all streets and highways abutting their property. In *Highway Comm. v. Yarborough*, 6 N.C. App. 294, this Court speaking to this matter said:

> "(W)hile a substantial or unreasonable interference with an abutting landowner's access constitutes the taking of a property right, the restriction of his right of entrance to reasonable and proper points so as to protect others who may be using the highway does not constitute a taking. Such reasonable restriction is within the police power of the sovereign and any resulting inconvenience is *damnum absque injuria.*"

The construction of a median strip so as to limit landowner's ingress and egress to lanes for southbound travel when he formerly had direct access to both the north and southbound lanes has been held to be a valid traffic regulation adopted by the Highway Commission in the exercise of the police power

vested in it by statutes. *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732 (1962). When a road or street is closed or abandoned so as to leave the landowner's property on a *cul-de-sac* and increase the distance one must travel to reach points in one direction, such inconvenience is not compensable. *Wofford v. Highway Commission,* 263 N.C. 677, 140 S.E. 2d 376 (1965) ; cert. denied; 382 U.S. 822; *Snow v. Highway Commission,* 262 N.C. 169, 136 S.E. 2d 678 (1964). Thus, since plaintiffs retain full right of access to and from all abutting streets and highways, we agree with the trial judge's ruling that the construction of the median strip on Patton Avenue and the dead-ending of Haywood Street was a legitimate and proper exercise of the police power of the State not entitling the plaintiffs to damages.

For the reasons stated we hold the facts found support the conclusions of law which in turn support the judgment entered.

Affirmed.

Judges BROCK and MORRIS concur.