No. 65,031

MICHAEL S. HALES AND MARLENE S. HALES, *Appellants*,
v. THE CITY OF KANSAS CITY, KANSAS, *Appellee*.

(804 P.2d 347)

Opinion filed January 18, 1991.

*George A. Lowe*, of Lowe, Farmer, Bacon & Roe, of Olathe, argued the cause and was on the brief for appellants.

*Timothy P. Orrick*, of Holbrook, Ellis & Heaven, P.A., of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the landowners (Michael S. Hales and Marlene S. Hales) from the entry of summary judgment in favor of The City of Kansas City, Kansas (The City). The trial court held the limitation of access to one-half of the landowners' property is an exercise of police power for which no compensation is payable.

This matter arose as the result of The City preventing northbound traffic on Rainbow Boulevard from making a left turn into the south parking lot of the landowners' apartment complex and preventing traffic leaving the same parking lot from making a left turn and proceeding north on Rainbow Boulevard.

The City prevented turns by installing a raised median that divides the northbound and southbound lanes of Rainbow Boulevard. The median was installed as part of the partial relocation and rebuilding of Rainbow Boulevard.

The landowners' property, known as Cambridge West Apartments, is located on the west side of Rainbow Boulevard and has 48 separate units. There are two buildings with 24 units in each building. These two buildings lie to the north and south of each other, and are joined in the middle by an office/clubhouse complex, swimming pool, and tennis court. A parking lot lies north of the north building, and a separate parking lot lies south of the south building. The two parking lots are not connected. Vehicular traffic from one parking lot to the other can only be accomplished by using Rainbow Boulevard.

Prior to the partial relocation of Rainbow Boulevard, vehicles exiting from either of the lots could make either northbound or southbound turns onto Rainbow, while vehicles traveling either northbound or southbound on Rainbow could make turns directly into either of the lots. As a part of the road improvement project, Rainbow Boulevard in the vicinity of the landowners' property was relocated slightly easterly of its original location, new curbing was installed, a traffic signal was installed at 36th Street, and a raised median was constructed between the northbound and southbound lanes of Rainbow Boulevard south of 36th Street.

The landowners' north and south parking lots each retain a driveway directly connecting the lots to Rainbow Boulevard. Vehicles exiting the landowners' north parking lot are able to make northbound and southbound turns onto Rainbow, and both northbound and southbound Rainbow traffic is able to turn directly into such lot. All traffic movements into and out of the north parking lot are regulated by a traffic signal installed at 36th Street. The median, however, prevents traffic access to and from the south lot to and from the northbound lane.

The City took both a permanent and temporary easement on a portion of the landowners' property (neither of which contributed to the issue in question). The landowners argue that The City elected to acquire by eminent domain a right to limit access to their property as opposed to limiting access under its police powers.

Neither the petition nor the appraisers' report make reference to limiting access to the landowners' property. The landowners rely on incorporation of the plans and specifications furnished by The City's right-of-way department in the appraisers' report for its argument that The City elected to acquire by eminent domain the right to limit access.

The landowners rely on *Smith v. State Highway Commission*, 185 Kan. 445, 346 P.2d 259 (1959), for authority. In *Smith*, the State sought to acquire rights of access in its petition. In this case, The City did not seek to acquire access in the petition. It has consistently claimed it was limiting access under its police power and not by eminent domain. The trial court so found and we agree that The City did not elect to acquire by eminent domain the right to limit access to landowners' property.

In *Hudson v. City of Shawnee*, 246 Kan. 395, 403, 790 P.2d 933 (1990), we held that the reasonableness of a police power regulation may be administratively asserted at any time by a city and tried in a condemnation action.

Here, it is important to recognize that we are not dealing with a denial of access because of a condemnation action or even a limitation of access by reason of a condemnation action. The condemnation action is immaterial to the issue before us. The City simply has limited the general public's ability to make a left turn in the area of the landowners' south parking lot. We view this issue the same as we would if The City had decided to prohibit left turns at this area.

The parties stipulated that the purpose of the improvement project "is to upgrade Rainbow [Boulevard] capacity to safely handle the present large volume of traffic, and to safely handle the predicted increase in traffic volume in the future." The parties also stipulated that in order to increase the Boulevard's capacity to safely handle the increasingly large volumes of traffic, the raised median was installed to "limit the location where traffic may enter and exit the traffic flow, thereby increasing the volume of traffic which can safety travel Rainbow Boulevard."

As stated in Syl. ¶ 3, *Hudson v. City of Shawnee*, 246 Kan. at 395, "Concurrent with a compensable taking in a condemnation proceeding, the State may validly exercise the police power for traffic control and public safety, for which there can be no com-

pensation, even if it affects the method of ingress and egress to the affected property."

As reported in 2A Nichols on Eminent Domain 6.37(4) (rev. 3d ed. 1990), interference with passage along a public way under an exercise of police power by installing a median strip, limiting the mode and type of traffic, and instituting one-way traffic is not a compensable taking. See *State ex rel. Moore v. Bastian*, 97 Idaho 444, 546 P.2d 399 (1976) (median strip); *State v. Cheris*, 153 Ind. App. 451, 287 N.E. 2d 777 (1972) (median strip does not constitute a taking of property within the meaning of the law of eminent domain); *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E.2d 732 (1962) (median strip); *Realty Corp. v. Highway Comm.*, 15 N.C. App. 704, 190 S.E.2d 677 (1972) (median strip); *Brill v. Dept. Transportation*, 22 Pa. Commw. 202, 348 A.2d 451 (1975) (median strip); *Dept. of Transportation v. Nod's Inc.*, 14 Pa. Commw. 192, 321 A.2d 373 (1974) (median strip caused a 4-mile diversion of traffic from one side of the highway).

This court has recognized the above general rule. In *Smith v. State Highway Commission*, 185 Kan. at 454, this court said:

"It is well settled the limitation and regulation of *highway traffic* comes under the police power, and it makes no difference how or where any part of the traffic gained access to the road. The regulation of traffic without liability for the payment of compensation includes, among other things, prohibiting left turns, prescribing one-way traffic, prohibiting access or cross-overs between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways."

However, in *Brock v. State Highway Commission*, 195 Kan. 361, 371, 404 P.2d 934 (1965), this court commented that median dividers and one-way streets (as well as limited access highways, express thoroughfares, barrier curbs, and the like) may "place a restriction on an abutting property owner's free and convenient access to his property, but as long as the restriction is reasonable the courts will not interfere." This language is dicta and inconsistent with later cases.

In *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 524 P.2d 1165 (1974), an issue was presented as to whether a witness in an inverse condemnation proceeding took into consideration the fact that a median strip was constructed

in determining his opinion concerning the after value of the property. This court noted: "The trial court instructed the jury 'that the landowner is not entitled to compensation for damages, if any, resulting from the regulation of traffic through prohibiting cross over between separate traffic lanes or construction of medial dividers.' " 215 Kan. at 399. Later in the opinion, this court stated:

"The appellant requested the trial court to instruct that the landowner is not entitled to compensation for damages, if any, resulting from the regulation of traffic through prohibiting left turns, prescribing one-way traffic, prohibiting cross over between separate traffic lanes, construction of medial dividers or barriers and installation of traffic control signals.

"The appellant contends the instruction would have permitted it to argue that the damages, if any, resulting from the extension or enlargement of the green island were not compensable, if it was a means of regulating traffic.

"While the foregoing requested instruction may have been proper in a given case, it has no application to the evidence presented at the trial in the instant case. There is no competent testimony in the record to show or even indicate that the closing of the west access entrance on Highway 50 was a means of regulating traffic. It must be conceded the city could regulate traffic, but no testimony was presented on this point and no testimony was presented as to its reasonableness. The only mention in the testimony was as to the median strips in the center of the highway, and the court instructed the installation of the median strips and what effect they might have had on market value was not compensable.

"Accordingly, the trial court properly refused to give the requested instruction of the appellant." 215 Kan. at 401-02.

We conclude that limiting the landowners' ingress and egress to lanes for southbound travel when they formerly had direct access to both the northbound and southbound lanes of traffic, whether by a median strip, one-way street, or no left turn, is a valid exercise of police power and is not compensable. The trial court did not err in so holding.

Affirmed.