(917 P.2d 1351)

No. 73,227

KENNETH W. PRINGLE and BANK IV, KANSAS, N.A., as Trustees of the K. T. WIEDEMANN TRUST UNDER THE LAST WILL AND TESTAMENT OF K. T. WIEDEMANN, DECEASED and as Trustees of the GLADYS H. G. WIEDEMANN POWER OF APPOINTMENT TRUST UNDER THE LAST WILL AND TESTAMENT OF GLADYS H. G. WIEDEMANN, DECEASED; BILL LUSK, JR., as Trustee of the AETNA TRUST; FRANK MCMASTER, JOHN F. MCMASTER, and SUSAN M. MCMASTER; WICHITA INSULATION AND ALUMINUM CO., INC.; LOLA F. BOONE; and WINDOW WORKS, a sole proprietorship, *Appellants*, v. CITY OF WICHITA, *Appellee*.

Opinion filed February 2, 1996.

*Jeff C. Spahn, Jr.*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, and *Frank C. McMaster*, of McMaster & McMaster, of Wichita, for appellants.

*Joseph W. Kennedy* and *Robert W. Coykendall*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, and *Gary E. Rebenstorf*, director of law, and *Douglas J. Moshier*, assistant city attorney, for appellee.

Before PIERRON, P.J., ELLIOTT and ROYSE, JJ.

ROYSE, J.: This lawsuit arises out of a decision by the City of Wichita to close a portion of 127th Street East approximately a block north of Kellogg and to close the median on Kellogg at its intersection with 127th Street East. The plaintiffs, owners of the real estate surrounding the intersection, filed suit to enjoin the City from carrying out its plan. In the alternative, plaintiffs sought an award of money damages against the City for wrongful taking of their property rights. Following a bench trial, the district court issued comprehensive and detailed findings and conclusions and granted judgment to the City. Plaintiffs appeal.

Selected portions of the district court's findings provide a brief summary of the essential facts:

"8. The City of Wichita, Sedgwick County, and the State of Kansas, are in the process of completing what is commonly known as the Northeast Expressway, a four-lane freeway running from approximately the intersection of 29th Street north and I-135 to the intersection of Kellogg east of 127th Street. The City had the responsibility for constructing the Expressway from I-135 and 29th Street to the intersection at 29th and Webb Road. The County had the responsibility for constructing the Expressway from the intersection at Webb Road to its southern terminus at Kellogg. The State has overall responsibility and upon completion of the construction will take jurisdiction of the Expressway and have the responsibility for maintenance, setting speed limits, etc. . . .

. . . .

"10. The Expressway intersects with Kellogg at a point less than one-quarter mile east of the intersection at 127th Street East and Kellogg. There is an off-

ramp for traffic traveling south on the Expressway to go westbound onto westbound Kellogg. The ramp has a design speed of 45 miles per hour and a posted speed limit of 45 miles per hour. It is this circumstance that has led to the present lawsuit. . . .

"11. Although the City was not responsible for the intersection of the Expressway and Kellogg, it became apparent during the construction stage that the off-ramp of the Expressway leading directly to the intersection of 127th Street East would present a severe traffic hazard because the acceleration lane leading off the ramp intersected traffic coming south on 127th Street and also posed a danger of weaving between traffic trying to go north on 127th Street from Kellogg and traffic coming from the ramp to go south on 127th Street at an open median at that intersection. . . . On January 14, 1993, William J. McKinley, P.E., the Traffic Engineer for the City of Wichita, wrote in a memo to Bill Stockwell, Metropolitan Area Planning Department, to the effect that he had reviewed the plans for the interchange of K-96 and Kellogg and recommended that 127th Street East be closed to the north of Kellogg. He also recommended that the median at that intersection be closed as well. . . .

. . . .

"26. Prior to the closure of 127th Street East north of the Turnpike and closure of the median at the intersection of 127th Street East and Kellogg (hereinafter referred to as the 'City Action'), the direct access of the property owners to adjacent public roadways was as follows:

A. The Aetna Trust property [northeast of intersection] had total access to 127th Street East and no access to Kellogg.

B. McMaster [northwest of intersection] had total access to 127th Street East and access to a frontage road on the west 639 feet of his property which had access to Kellogg.

C. The Boone property [southwest of intersection; includes Wichita Insulation] had no legal access to Kellogg but complete access to 127th Street East.

D. The Wiedemann property [southeast of intersection] had no legal access to Kellogg but complete access to 127th Street East.

. . . This remained unchanged even after the City Action. . . .

"27. Prior to the City Action, there were twelve different routes of traffic flow through the intersection of 127th Street and Kellogg. After the City Action, there will be only four different routes of travel. Traffic traveling west on Kellogg will not be permitted to turn south onto 127th Street East to reach either Wichita Insulation or Wiedemann Trust properties, nor will the traffic be permitted to turn north on to 127th Street East to reach McMasters' property or Aetna Trust's property. Traffic traveling north on 127th Street East, upon reaching the intersection of Kellogg, will not be permitted to turn west on to Kellogg as previously allowed and will not be permitted to continue north on 127th Street East. Traffic

"traveling south on 127th East will reach a cul-de-sec, thereby prohibiting such traffic from reaching Kellogg as previously allowed. Traffic traveling east on Kellogg, upon reaching 127th East, will not be permitted to turn north on to 127th Street East as previously allowed."

Plaintiffs' first argument on appeal is that the district court erred in determining the City's actions did not constitute a compensable taking. Plaintiffs contend their access to Kellogg and 127th Street East has been severely curtailed because of the City's actions.

It is well settled in Kansas that a city may exercise its police powers to limit and regulate traffic. See *Hales v. City of Kansas City*, 248 Kan. 181, 184, 804 P.2d 347 (1991). A reasonable regulation imposed to protect the public is not a " 'taking in the constitutional sense because the public use is paramount and public safety is the desideratum.' " *Hudson v. City of Shawnee*, 246 Kan. 395, 403, 790 P.2d 933 (1990) (quoting *Ray v. State Highway Commission*, 196 Kan. 13, 23, 410 P.2d 278, *cert. denied* 385 U.S. 820 [1966]). If a regulation is determined to be unreasonable, it then becomes a taking and is compensable. The burden of proof is upon the one asserting unreasonableness. 246 Kan. at 403-04.

Plaintiffs rely on a right of access which vests in the owner of land adjoining a road or highway and which entitles the owner to go and return from his own land to the road or highway without unreasonable interference. *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, Syl. ¶ 6, 559 P.2d 347 (1977). The rights of an abutting owner cannot be taken or materially interfered with without just compensation. *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, Syl. ¶ 4, 524 P.2d 1165 (1974).

The plaintiffs' reliance on a claim of lost "access" is misplaced. The district court found that their "access" remained unchanged after the City's action. Plaintiffs have not challenged this finding on appeal. What the plaintiffs are really complaining about is the fact that, once they get to the highway (Kellogg or 127th Street), their routes of travel on the highway are now limited. For example, a person leaving the McMaster property has access to 127th Street but can only go north on that street. Travel to the south has been eliminated by the City's action. Similarly, a person leaving the

Boone property can go north on 127th Street to Kellogg and then travel east. Travel westbound on Kellogg has been restricted by closing the median on Kellogg.

The distinction between "access" and traffic flow is important. See *Teachers*, 221 Kan. at 335. "[A]n abutting owner has no right to the continuation of a flow of traffic in front of his property. The state's exercise of its police power in such situations is predominant and controlling." *Brock v. State Highway Commission*, 195 Kan. 361, 371, 404 P.2d 934 (1965). For example, the Supreme Court has commented that the regulation of traffic under the police power without liability for payment of compensation "includes, among other things, prohibiting left turns, prescribing one-way traffic, prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways." *Ray v. State Highway Commission*, 196 Kan. 13, 17, 410 P.2d 278, *cert. denied* 385 U.S. 820 (1966) (quoting *Smith v. State Highway Commission*, 185 Kan. 445, 454, 346 P.2d 259 [1959]); see *Eastborough Corporation, Inc. v. City of Eastborough*, 201 Kan. 491, 497, 441 P.2d 891 (1968).

The plaintiffs contend this case is virtually identical to *Teachers*, 221 Kan. 325. *Teachers* involved the decision by the City of Wichita to convert Kellogg to a fully controlled access facility. Part of the plan involved moving Kellogg 90 feet north of its previous location. The effect of the City's action was that the plaintiffs lost their direct access to the highway. Instead, long distances had to be traveled from plaintiffs' properties over "circuitous" and "torturous" routes to gain access to Kellogg. The district court determined that plaintiffs had been denied reasonable access to Kellogg, and the Supreme Court agreed.

While plaintiffs latch on to the phrase "circuitous route" in an attempt to compare this case to *Teachers*, they ignore the district court's finding that their direct access to Kellogg and 127th Street is unchanged by the City's action in this case. That finding distinguishes this case from *Teachers*. Any circuity of travel faced by the plaintiffs in this case is the same circuity all drivers face when a city lays out one-way streets, creates cul-de-sacs, or closes medians

to prevent left turns. Plaintiffs' reliance on *Teachers* is misplaced. See *Eastborough Corporation*, 201 Kan. at 497 (noting the change in traffic pattern applied equally to plaintiffs and the general public); Annot., Abutter's Access—Traffic Regulation, 73 A.L.R.2d 689; 39 Am. Jur. 2d, Highways, Streets, and Bridges § 179.

The case most directly on point is *Hales v. City of Kansas City*, 248 Kan. 181. In *Hales*, the City of Kansas City installed a raised median that divided the northbound and southbound lanes of Rainbow Boulevard. As a result, northbound traffic on Rainbow Boulevard could no longer turn left into the south parking lot of the Hales' apartment complex. Similarly, traffic leaving that parking lot could no longer turn left to go north on Rainbow Boulevard. The district court rejected the *Hales'* claim that a compensable taking had occurred, and the Supreme Court affirmed:

"As reported in 2A Nichols on Eminent Domain 6.37(4) (rev. 3d ed. 1990), interference with passage along a public way under an exercise of police power by installing a median strip, limiting the mode and type of traffic, and instituting one-way traffic is not a compensable taking. See *State ex rel. Moore v. Bastian*, 97 Idaho 444, 546 P.2d 399 (1976) (median strip); *State v. Cheris*, 153 Ind. App. 451, 287 N.E. 2d 777 (1972) (median strip does not constitute a taking of property within the meaning of the law of eminent domain); *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E.2d 732 (1962) (median strip); *Realty Corp. v. Highway Comm.*, 15 N.C. App. 704, 190 S.E.2d 677 (1972) (median strip); *Brill v. Dept. Transportation*, 22 Pa. Commw. 202, 348 A.2d 451 (1975) (median strip); *Dept. of Transportation v. Nod's Inc.*, 14 Pa. Commw. 192, 321 A.2d 373 (1974) (median strip caused a 4-mile diversion of traffic from one side of the highway). 248 Kan. at 184.

The district court concluded that the City's action in this case was a reasonable exercise of the police power as the closure of the street and the closure of the median were "justified to achieve driver safety." The district court did not err in concluding that no compensable taking had been shown.

Plaintiffs contend the district court erred in considering the benefits accruing to plaintiffs from construction of the Northeast Expressway. This contention apparently refers to the following observation by the district court: "Furthermore, it is uncontroverted that the construction of the K-96 Expressway in itself enhanced the value of all properties surrounding 127th Street East and Kel-

logg." Plaintiffs complain that this finding is unsupported by the evidence. The record, however, does document traffic flow through the area as a result of the Northeast Expressway. Secondly, plaintiffs assert that the district court had no authority to consider any benefits to their property from the Northeast Expressway. In light of our conclusion that the trial court correctly determined no compensable taking occurred, questions regarding the measurement of market value, before and after, are moot. See *Kimberlin v. City of Topeka*, 238 Kan. 299, 301, 710 P.2d 682 (1985) (courts do not give opinions upon abstract propositions which cannot affect the matter in issue).

Plaintiffs also argue that it was unnecessary to close the median on Kellogg; they contend a channelized median was a reasonably safe alternative. The mere fact that plaintiffs disagree with the City as to the appropriate measures to assure public safety is insufficient to establish that the action taken by the City was unreasonable. It is not the function of the court to substitute its judgment for that of the City. *Eastborough Corporation*, 201 Kan. at 495.

Finally, plaintiffs argue that under *Dolan v. City of Tigard*, 512 U.S. 374, 129 L. Ed. 2d 304, 114 S. Ct. 2309 (1994), the City was required to show a rough proportionality between the benefits conferred by the City's police power regulations and the burdens imposed on the private property owner. The district court concluded that *Dolan* is distinguishable, and we agree. First, in *Dolan* the city conditioned issuance of a permit for store expansion on the owner's dedication of a part of her property for improvement of a drainage system and construction of a pedestrian/bicycle path. Plaintiffs here have not been required to deed property to the City. Second, in *Dolan* the Supreme Court emphasized that it was concerned with an adjudicative decision, not with decisions of a legislative nature. 512 U.S. at 385. The City's acts in this case regulating traffic under its police power fall within the category of legislative decisions. See *Eastborough Corporation*, 201 Kan. at 494-95 (city regulating streets and traffic is acting as an administrative arm of the legislature). Finally, *Dolan* requires an examination of the relationship between the conditions imposed by the city and the impact *of* the owner's proposed development, not as plaintiffs here mistak-

enly state, the impact *on* the development. Plaintiffs' reliance on *Dolan* is unavailing.

For all the foregoing reasons, the district court correctly determined that the City's actions did not constitute a compensable taking.

Plaintiffs' second argument is that the district court erred by not granting injunctive relief. Plaintiffs acknowledge that generally injunctive relief is not an available remedy against a city exercising its police powers. See *Brock*, 195 Kan. at 365-66. Plaintiffs attempt to avoid this principle by arguing the City's action violated an environmental impact statement which is required under federal law. This argument is not persuasive.

First, plaintiffs fail to cite to the record in support of their assertion that the City's action violated the environmental impact statement. Material statements of fact made without reference to the record are presumed to be without support in the record. *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, 207, 836 P.2d 1193 (1992). In fact, the district court found just the opposite; it determined the City's action did not violate the environmental impact statement. Plaintiffs have not appealed from that determination. Second, plaintiffs' reliance on the environmental impact statement is misplaced, because it dealt exclusively with K-96 and did not proscribe which streets or medians the City could close. Finally, plaintiffs acknowledged at oral argument that they cannot dispute the fact that the City's action is now complete. Any questions about the district court's failure to enjoin the city from doing something it has already done are moot.

Affirmed.