No. 94,869

KAU KAU TAKE HOME NO. 1, *et al.*, *Appellants*, v. CITY OF
WICHITA *Appellee*,

(135 P.3d 1221)

Opinion filed
June 9, 2006.

*Joseph R. Borich, III*, argued the cause and *James B. Jackson* was with him on
the brief for the appellants.

*Douglas J. Moshier*, senior city attorney, argued the cause and *Gary E. Reben-
storf*, city attorney, was with him on the brief for the appellee.

ROSEN, J: Kau Kau Take Home No. 1, Inc. and Peggy Schoen-hofer (Appellants) appeal the denial of their claims for inverse condemnation against the City of Wichita (City). Appellants operate a Kentucky Fried Chicken restaurant located on West Irving Street southeast of the intersection of Tyler Road and Kellogg (U.S. Highway 54) in Wichita. Tyler Road is a two-way street running in a north-south direction. Kellogg/US 54 is an access-controlled highway running in an east-west direction. West Irving Street is a two-way street, generally running in an east-west direction on the south side of Kellogg and the east side of Tyler Road. Appellants' property accesses West Irving Street via two entrances directly onto West Irving Street. Appellants' property does not have direct access to either Tyler Road or Kellogg/US 54.

In 2002, the City began a construction project to reconfigure and reconstruct the intersection of Tyler Road and Kellogg/US 54. Prior to the City's project, West Irving Street intersected Tyler Road just south of the intersection of Tyler Road and Kellogg/US 54 and a few hundred feet west of the Appellants' property. The

City's project eliminated the intersection between Tyler Road and West Irving Street, causing West Irving Street to dead-end just west of the Appellants' property.

Prior to the City's project, patrons could access the Appellants' restaurant from Tyler Road by turning east onto West Irving Street directly from Tyler Road. Patrons on Kellogg could access the restaurant by turning south on Tyler Road then east onto West Irving Street. To leave Appellants' restaurant along Tyler Road or Kellogg/US 54, patrons turned left out of the parking lot and drove a few hundred feet west on West Irving Street to Tyler Road. From Tyler Road, patrons could access Kellogg/US 54.

After the City's project eliminated the intersection of West Irving Street and Tyler Road, patrons approaching the restaurant from Tyler Road must turn east onto East Kellogg Street (the south outer roadway to Kellogg/US 54), to drive past the restaurant, then turn right onto a spur that connects to West Irving Street and backtrack to the restaurant entrance. Patrons traveling west on Kellogg/US 54 are required to exit at the Tyler Road ramp onto West

Kellogg Street (the north outer roadway to Kellogg/US 54), follow the U-turn lane to East Kellogg Street, driving past the restaurant, then turn right onto a spur that connects to West Irving Street and backtrack to the restaurant entrance.

The City's project significantly altered the route for patrons leaving Appellants' restaurant. Patrons returning to Tyler Road and westbound Kellogg/US 54 must turn right upon exiting Appellants' parking lot, travel east on East Kellogg Street approximately 1 mile to Ridge Road, turn left, crossing Kellogg/US 54, turn left onto West Kellogg Street, driving west approximately 1 mile to Tyler Road to the westbound Kellogg/US 54 highway. According to Appellants' expert, the City's project increased the driving distance between Appellants' property and westbound Kellogg/US 54 or Tyler Road by approximately 2 miles.

However, it is important to note that the project did not change either of the Appellants' two points of access to West Irving Street and did not eliminate any direct access between the Appellants' property and Tyler Road because Appellants never had direct access to Tyler Road.

Appellants filed a petition against the City for inverse condemnation, seeking compensation for the temporary and permanent restriction of access to their property. Appellants also sought payment for a temporary easement, claiming that the contractors used Appellants' land for access during the construction of the project. The City filed a motion for summary judgment. The district court granted the City's motion, denying all of Appellants' claims. Appellants bring this appeal directly to us pursuant to K.S.A. 26-504, which allows an appeal directly to the Supreme Court when a district court denies a petition for eminent domain.

For their first claim of error, the Appellants assert that the district court erred when it granted the City's summary judgment motion, denying their claim for a temporary easement. Appellants claim that the contractors, as agents of the City, "trespassed and invaded the real estate of the [Appellants] in the course and scope of their duties to Defendant City, and have used said real estate for their own purposes, including access to other portions of the

Project, without permission, and without just cause or excuse, in contravention of the ownership interests of [Appellants]."

In its motion for summary judgment, the City argued that the Appellants' claim sounded in the tort of trespass rather than inverse condemnation. Because Appellants failed to file a notice of claim with the City pursuant to K.S.A. 12-105b, they were precluded from raising a tort claim under the Kansas Tort Claims Act against the City.

Appellants, on the other hand, argue that all eminent domain cases involve trespass or a continuing nuisance. According to Appellants, when the offending acts are committed by private individuals, the claim sounds in tort. However, when the trespass or continuing nuisance is committed by a public body with the power of eminent domain and the purpose of doing public good, the claim must be for inverse condemnation rather than a tort.

"Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *City of Wichita v. McDonald's Corp.*, 266 Kan. 708, 714, 971 P.2d 1189 (1999). An appellate court reviews a summary judgment decision using an unlimited standard of review. 266 Kan. at 714.

## ANALYSIS

Inverse condemnation is a cause of action for compensation when a governmental entity takes private property. An inverse condemnation proceeding is initiated by the party with an interest in the private property rather than the governmental entity. Such an action is available when private property has actually been taken for public use without the initiation of formal condemnation proceedings by the governmental taker. To establish a claim for inverse condemnation, a party must establish an interest in the real property and a taking. *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, 772, 958 P.2d 656 (1998).

A compensable taking requires the government to acquire possession as well as the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as provided by the statute underlying the pro-

ceeding. In either a condemnation or an inverse condemnation proceeding, the question of whether there has been a compensable taking is a question of law. 264 Kan. at 772.

In *Deisher*, the plaintiffs filed an inverse condemnation action against the Kansas Department of Transportation (KDOT), claiming that blasting on an adjacent easement for a highway construction project caused the water table to drop and significantly reduced the water level in the Deishers' well. 264 Kan. at 764. The *Deisher* court concluded that the damage to the Deishers' well was not necessary to complete the KDOT project because the State did not need to use Deishers' water or to divert their water to complete the road construction project. Rather, the damage to the well resulted from the negligence of the State or those acting on behalf of the State. Consequently, the Deishers' claim sounded in tort, not inverse condemnation. 264 Kan. at 774.

The *Deisher* analysis applies in this case. Appellants do not allege that the contractors asserted control over the property to the exclusion of the Appellants. The alleged damage to the Appellants' property caused by the contractors driving over the property was not necessary to the completion of the City's project. The alleged damage was caused by the contractor's negligence. Consequently, the Appellants' claim sounds in tort, not inverse condemnation.

K.S.A. 2005 Supp. 12-105b requires any person with a claim against a municipality under the Kansas Tort Claims Act to file a written notice of the claim with the municipality. The filing of a proper notice of claim is a prerequisite to filing an action in the district court against a municipality. The notice requirements of K.S.A. 2005 Supp. 12-105b are jurisdictional. If the statutory requirements are not met, the court cannot obtain jurisdiction over the municipality. *Myers v. Board of Jackson County Comm'rs*, 280 Kan. 869, 876-77, 127 P.3d 319 (2006).

Appellants admit that they have not filed a notice of claim with the City. Accordingly, the Appellants' failure to provide the statutory notice of claim precludes their relief. The district court properly granted the City's summary judgment motion in regard to the Appellants' claim for a temporary construction easement.

For their second claim of error, the Appellants assert that the district court improperly granted the City's summary judgment motion, denying their claim for a temporary or permanent easement. Appellants claim that they should be compensated for the loss of access to their property on both a temporary and permanent basis. Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Review of a decision granting summary judgment decision is de novo. *McDonald's Corp.*, 266 Kan. at 714.

To establish a claim for an easement based on inverse condemnation, the Appellants must show that they have an interest in the land and that there was a compensable taking. The City does not contest Appellants' interest in the land. Rather, the City contests the Appellants' assertion that there has been a compensable taking. The determination of whether there was a compensable taking is a question of law. This court reviews questions of law using an unlimited standard. *Eberth v. Carlson*, 266 Kan. 726, 731, 971 P.2d 1182 (1999).

Appellants argue that the compensable taking is the restriction of the right of access to their property. Because patrons must travel further to access their restaurant, Appellants argue that their right of access has been impaired.

" 'Right of access' is traditionally defined as an abutting landowner's common-law right of access from the landowner's property to abutting public roads. Such a right is the right to reasonable, but not unlimited, access to existing and adjacent public roads. [Citations omitted.] When the government actually blocks or takes away existing access to and from property, the landowner is generally entitled to compensation." *McDonald's Corp.*, 266 Kan. at 718.

See also *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 396-97, 524 P.2d 1165 (1974) (allowing the property owner to be compensated for the loss in value based on the loss of one of its access points to the abutting highway); *Kohn Enterprises, Inc. v. City of Overland Park*, 221 Kan. 230, 235-36, 559 P.2d 771 (1977) (upholding the reduction in property value based on the elimination of an access point to an abutting highway).

Right of access is distinct from the "regulation of traffic flow" or "circuity of access." *McDonald's Corp.*, 266 Kan. at 718. The

regulation of traffic flow, also referred to as "restricted access," is a "limitation or restriction on the landowner's right of access to and from abutting public roads or highways." *Eberth v. Carlson*, 266 Kan. at 734; *McDonald's Corp.*, 266 Kan. at 718. Such a restriction involves the police power of the State. Kansas courts have recognized a city's police power to regulate and restrict the use of public roads to the extent necessary to "'provide for and promote the safety, peace, health, morals and general welfare of the people.' [Citations omitted.]" *Eberth*, 266 Kan. at 734.

An abutting property owner has no right to the continuation of a flow of traffic from nearby highways to the owner's property. *McDonald's Corp.*, 266 Kan. at 718. As long as the regulation is reasonable, the regulation of traffic flow does not involve a taking. *Eberth*, 266 Kan. at 735 (eliminating the landowners' highway cross-over and constructing a new cross-over on nearby land was not unreasonable and did not constitute a taking); see also *Hales v. City of Kansas City*, 248 Kan. 181, 185, 804 P.2d 347 (1991) (installing medians that prevented turning onto the landowner's property was a reasonable exercise of police power and not compensable); *Hudson v. City of Shawnee*, 246 Kan. 395, 403, 790 P.2d 933 (1990) (closing one of the landowner's two entrances onto the abutting street was a reasonable exercise of the city's police power); *Small v. Kemp*, 240 Kan. 113, 727 P.2d 904 (1986) (relocating a frontage road near the landowner's property, eliminating the intersection between the street abutting the property and another street, and causing a circuitous route to landowner's property was a reasonable exercise of police power and not a compensable taking); *Ray v. State Highway Commission*, 196 Kan. 13, 19-20, 410 P.2d 278, *cert. denied* 385 U.S. 820 (1966) (replacing landowner's access to limited access highway with access to a frontage road that accessed the highway was not unreasonable and did not amount to a taking); *Brock v. State Highway Commission*, 195 Kan. 361, 370-71, 404 P.2d 934 (1965) (causing circuity of travel by eliminating the landowner's direct access to a limited access highway and constructing a new frontage road for access is not a taking); *Pringle v. City of Wichita*, 22 Kan. App. 2d 297, 917 P.2d 1351, *rev. denied* 260 Kan. 994 (1996) (eliminating the intersection between the

street abutting landowners' properties and a main thoroughfare without changing the landowners' entrances was a reasonable exercise of police power and not a taking); *Lewis v. Globe Constr. Co.*, 6 Kan. App. 2d 478, 484, 630 P.2d 179, *rev. denied* 230 Kan. 818 (1981) (temporarily closing the road abutting landowners' property for repairs and temporarily blocking access to landowners' parking lots was a reasonable exercise of the police power).

In *McDonald's*, the City of Wichita (city) instituted an eminent domain action for a roadway construction project, seeking a temporary easement for construction and a permanent physical taking of part of Wal-Mart's land. Wal-Mart owned property located at the northeast corner of Dugan Street and West Kellogg Street, the north outer road to Kellogg/US 54. Wal-Mart had two entrances on Dugan Street and two entrances on West Kellogg Street. The City eliminated the intersection of Kellogg and Dugan by installing an overpass without an exit onto Dugan and converted the outer roads on either side of Kellogg/US 54 to one-way rather than two-way roads. After the City's project, Wal-Mart continued to have two entrances on Dugan Street and two entrances on West Kellogg Street. Nevertheless, patrons had to travel as much as three additional miles to reach Wal-Mart's property. Wal-Mart sought to increase its condemnation award based on the reduction in its property value due to circuity of access. Wal-Mart claimed the City's restrictions to its access were unreasonable.

The *McDonald's* court noted that Wal-Mart had access to the same streets after the construction project, and the City did not close any of the access points to Wal-Mart's property from the adjoining streets. In concluding that Wal-Mart could not consider the restricted access in determining the market value of the property, the *McDonald's* court acknowledged that Wal-Mart would not have had a claim for compensation based on the restriction of its access to public highways. The *McDonald's* court concluded that the exercise of the City's police power to regulate the traffic flow around Wal-Mart's property was not unreasonable and refused to allow Wal-Mart to repackage the "'unreasonable use of the police power' argument" into a valuation claim. 266 Kan. at 720-21, 725.

Other than the procedural posture that distinguishes this case from the *McDonald's* case, the *McDonald's* court's holding that there is no claim for compensation based on a restriction of access to Wal-Mart's property is on point with the facts in this case. The Appellants in this case have the same access to West Irving Street that they had prior to the City's project. The additional 2 miles of travel to access Appellants' property is less than the additional 3 miles of travel that the *McDonald's* court found to be reasonable. Like Wal-Mart, Appellants have failed to establish that the City's regulation of the traffic flow around Appellants' property was unreasonable. Thus, Appellants have failed to establish a compensable taking.

Appellants attempt to analogize this case to *Teachers Insurance & Annuity Ass'n of America v. City of Wichita*, 221 Kan. 325, 559 P.2d 347 (1977). In *Teachers*, the City of Wichita (City) changed Kellogg/US 54 to a fully controlled-access highway. Although the City constructed a service road to run alongside the highway, the service road was not a frontage road with direct access to Kellogg/US 54. Several landowners along Kellogg/US 54 brought a suit for inverse condemnation claiming a loss of access because they had direct access to Kellogg/US 54 before the construction project and no access to Kellogg/US 54 after the construction project. To reach the landowners' property from Kellogg/US 54 after the construction, patrons had to travel on several other streets to reach the service road. The *Teachers* court held that the police action in eliminating the direct access to Kellogg and replacing it with a "tortuous and circuitous route" was not a reasonable exercise of the City's police powers. 221 Kan. at 328, 336. The *Teachers* court distinguished its holding from *Brock* and *Ray* because the landowners in *Brock* and *Ray* were given access to the highway via a frontage road that had direct access to the highway. However, in the *Teachers* case, the City did not provide a frontage road with direct access to Kellogg/US 54. 221 Kan. at 333-34.

*Teachers* can be distinguished from the facts in this case. In *Teachers*, the landowners had direct access to Kellogg/US 54 before the construction project. After the construction project, the landowners in *Teachers* had no access to Kellogg/US 54 even

through a frontage road. Their access to Kellogg/US 54 required travel on several other roads. In this case, the Appellants never had access to Tyler Road or Kellogg/US 54. The Appellants' property had access to West Irving Street both before and after the City's construction project. Thus, the Appellants did not lose any direct access points. *Teachers* does not support the Appellants' claim for loss of access. .

Appellants also argue that this court should consider the substantial impairment of the fair market value of their property. However, Appellants fail to cite any authority for the proposition that the reduction in value constitutes a taking. This court specifically noted that "State action resulting merely in a diminution in the value of property" is not a taking. *Small*, 240 Kan. at 118. In making this statement, the *Small* court relied on *Mugler v. Kansas*, 123 U.S. 623, 31 L. Ed. 205, 8 S. Ct. 273 (1887). In *Mugler*, the State forced the closure of a brewery after the approval of a constitutional amendment forbidding the sale and manufacture of intoxicating liquors. The brewery owners argued that the brewery was built before the constitutional amendment and, thus, the forced closure amounted to a governmental taking because it decreased the value of the property. The *Mugler* court concluded that the exercise of the State's police power in prohibiting specific uses of property did not involve a taking regardless of whether there was a decrease in the value of the property. The *Mugler* court stated that the legislation did not "disturb the owner in the control or use of his property for lawful uses, nor restrict his right to dispose of it." 123 U.S. at 669.

Relying on *Mugler*, the *Small* court refused to find a taking because the change in traffic flow around the landowner's property diminished the value of the property. The *Small* court noted that the State's action did not control the use of the property or restrict the landowner's right to dispose of it. 240 Kan. at 119.

The *Small* court's analysis applies in this case. The City's construction project does not control the use of the Appellants' property or restrict the Appellants' right to dispose of the property. Thus, the Appellants' argument that there is a taking based on the reduction in the property value is without merit.

Appellants' claim for inverse condemnation due to a loss of access involves only the regulation of traffic flow. The City's road construction project has not changed the Appellants' direct access to an abutting street. Because the City's regulation of traffic flow near Appellants' property is a reasonable exercise of the City's police power, Appellants have failed to demonstrate a compensable taking. We affirm the district court's order granting summary judgment to the City and denying Appellants' claims for a temporary and permanent easement.

Affirmed.