No. 58,516

DEAN E. SMALL, *Appellee,* v. JOHN B. KEMP, Secretary of Transportation for the State of Kansas, *Appellant.*

(727 P.2d 904)

Opinion filed October 31, 1986. 

*Ronald D. Garrison,* of Holbrook and Ellis, P.A., of Kansas City, argued the cause, and *Michael Rees,* chief attorney, Kansas Department of Transportation, was with him on the brief for appellant.

*James T. Wiglesworth,* of Perry & Hamill, of Overland Park, argued the cause, and *Gregory M. Dennis,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The State took a temporary easement on a portion of the plaintiff's property to relocate a frontage road. The main issue is whether the State was exercising its police power in relocating and reorienting the roadway on land near but not touching the plaintiff's property. If the State's action was within its police power, the State is not liable to the plaintiff for the loss in property value due to the relocation. The district court found, as a matter of law, the State was exercising its power of eminent domain. The jury awarded plaintiff $50,000. The State appeals.

Dean Small, the plaintiff, is a veterinarian. For almost 10 years he has owned an animal clinic in Overland Park, Kansas. The clinic is located in the middle of three commercial properties. It originally fronted on Grant Circle which intersected with the I-35 east frontage road. Grant Circle terminated in a cul-de-sac south of Small's property, and the frontage road intersected with 75th Street north of the plaintiff's property.

BEFORE

AFTER

To relocate the frontage road, the State took a temporary easement on Small's property. The completed project relocated the frontage road, diverting the road from an area southwest of Small's property, so that it now runs around the property to the east and intersects with 75th Street 400 to 600 feet east of its old intersection. The portion of the old frontage road running west and directly in front of the property was vacated and torn up. Small's property is now located at the end of a cul-de-sac known as Grant Circle.

The court-appointed appraisers awarded Small $3,375.00 for the temporary easement. Small requested a jury trial. At the first trial, the jury awarded Small $10,000.00. The jury's after value finding was higher than the range of after value opinion testimony. The trial court granted Small a new trial.

At the second trial, the judge again found, as a matter of law, that when the State relocated the frontage road near Small's clinic, it was acting under its power of eminent domain. The jury, following the instructions pursuant to eminent domain, awarded Small $50,000 compensation. The State appeals, raising several issues.

The State complains that the trial court should not have granted Small a new trial. The first trial produced the following valuation testimony by the experts, Clay Roberts and Curtis Bliss, and the landowner:

| | SMALL | ROBERTS | BLISS | VERDICT |
|------------|-----------|-----------|-----------|-----------|
| Before | $300,000 | $279,884 | $208,000 | $260,000 |
| After | $110,000 | $142,862 | $205,500 | $250,000 |
| Difference | $150,000 | $137,022 | $ 2,500 | $ 10,000 |

The jury awarded Small $10,000.

The trial court granted Small a new trial because the jury's findings in the first trial were not within the range of the value testimony. *Mettee v. Kemp,* 236 Kan. 781, 696 P.2d 947 (1985). The State contends our decision in *Mettee* is wrong and should be overruled. It requests that we reconsider *Mettee* and rule that a verdict is properly within the range of opinion testimony if the before value finding is lower than the highest before value opinion in evidence or the after value finding is higher than the lowest after value opinion in evidence. The State claims this is the rule set forth in *City of Wichita v. May's Company Inc.,* 212 Kan. 153, 510 P.2d 184 (1973).

*Mettee* attempted to clarify the statutory language concerning compensatory damages when there is a partial taking of property. K.S.A. 26-513(c) provides:

"If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking."

K.S.A. 26-513 was enacted in 1963 and subsequently amended in 1969. Prior to that time, the customary procedure was for a jury to bring in a verdict stating the total amount of damages to be awarded the landowner without making a specific finding as to the value of the land before and after the taking. *Mettee* discussed the cases following the enactment of 26-513 and held "that in order for the verdict of a jury to be upheld, as being within the range of the evidence, its findings as to the 'before' and 'after' value of the property taken must fall within the range of the opinion testimony." 236 Kan. at 789.

*Mettee* follows the dictates of our present statute and guarantees the fairest results. Where a jury award is not within the requirements of K.S.A. 26-513, the trial court must grant a new trial.

Because the trial court correctly granted Small a new trial, we must now determine if the judge was correct when he found that, as a matter of law, the State had exercised its power of eminent domain to take Small's property.

K.S.A. 26-508 provides that the only issue to be determined by a jury is the amount of compensation for the land or the right taken by eminent domain. Prior to submitting the question of the amount of compensation, the trial judge must find that, as a matter of law, the taking was by eminent domain.

One of the powers of government is the ability, upon payment of adequate compensation, to take privately owned property which is useful to the public. Both the federal government and the individual state governments possess this power of eminent domain which is necessary to fulfill governmental responsibilities.

Governmental police power is the inherent power of government to take action which promotes the public health, safety, welfare, or morals. "Constitutional provisions against taking private property for public use without just compensation impose

no barrier to the proper exercise of the police power." *Kansas City Power & Light Co. v. Kansas Corporation Comm'n*, 238 Kan. 842, 850, 715 P.2d 19 (1986). Cases which discuss whether government action is the exercise of the power of eminent domain or police power use the term police power narrowly to designate only the governmental power to regulate the use of, or impair a right in, property to prevent detriment to the public interest without the payment of compensation. This court discussed the police power and the rights of abutting landowners in *Smith v. State Highway Commission*, 185 Kan. 445, 453-54, 346 P.2d 259 (1959).

The original concept of eminent domain contemplated only a physical appropriation of private land by the State. A reasonable interference by the State that does not affect the owner's land in any special or particular manner, so that any inconvenience is shared with neighbors and damages differ among them in degree and not in kind, is an exercise of government police power. Before a party may recover compensation for an eminent domain action, it must establish that it has an interest in the property and there has been a taking. This court has defined taking to mean "the acquiring of possession as well as the right of possession and control of tangible property to the exclusion of the former owner." *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 125, 671 P.2d 511 (1983). The requirement that there must be an actual taking of property by the government for an individual to receive compensation has been modified. Where a government has imposed significant restrictions on private property, a taking may be found and the government required to pay compensation.

Here the State acquired only a temporary easement along the southern portion of Small's property. Small concedes that the State's action has not resulted in the permanent taking of his land; his property is the same after the State terminated its use of the temporary easement as before it acquired the temporary easement. Small claims that, even though there was no permanent taking of his land, (1) the resulting loss in economic value of his business was a taking for which he should receive compensation; (2) the impairment of accessibility caused by the relocation of the frontage road to his property was unreasonable; and (3) whenever the diversion of traffic results in a cul-de-sac, the

affected landowner should be compensated. The State answers that the reduction in value of Small's property and the relocation of the access road was not a taking under eminent domain principles but a taking under the State's police power.

There are no Kansas cases which hold that State action resulting merely in a diminution in the value of property is a taking. In fact, one old Kansas case holds exactly the opposite. In *Mugler v. Kansas*, 123 U.S. 623, 31 L. Ed. 205, 8 S. Ct. 273 (1887), the State had forbidden the sale and manufacture of intoxicating liquors. It was argued that since the claimants' breweries were erected when it was lawful to engage in the manufacture of beer and were of little value for other purposes, the regulation destroyed, or at least materially diminished, the value of the property, and thus could not constitutionally be enforced without the payment of compensation. The court found the case did not involve the power of eminent domain. It was a prohibition upon the use of property which was injurious to the health, morals, or safety of the community. The legislation neither disturbed the owners' control or use of their property for lawful purposes, nor restricted their right to dispose of it. *Mugler* was reaffirmed in *Goldblatt v. Hempstead*, 369 U.S. 590, 8 L. Ed. 2d 130, 82 S. Ct. 987 (1962).

Sax, in discussing the highway access cases in *Takings and the Police Power*, 74 Yale L. J. 36, 74-75, (1964), states:

"In these cases, typically, government changes the location of its highway enterprise by diverting traffic, or by replacing an old highway with a new limited-access turnpike, or by closing a road completely. As a result property owners may sustain an economic loss. It would seem helpful to consider these cases in the same category as those in which one individual has received a benefit as a result of his proximity or favorable location in respect to the property of another. When, in the private sphere, an economic loss is sustained as a result of one party's moving or closing his business, no action for damages or compensation is allowed. Insofar as government exercises the same privilege which is available to every private citizen, it ought likewise to be free from a duty to compensate."

Courts have found instances of governmental actions that may result in a diminution of the property's value and are merely regulatory under the police power. For example, developers of new subdivisions may be required by a municipality to provide facilities such as roads, streets, sewers and playgrounds as a condition to approval of a plat, and applicants for permits to erect business buildings in commercial areas of a city may be required to provide offstreet parking. 1 Nichols on Eminent Domain

§ 1.42(2) (3rd ed. rev. 1985). A city ordinance, planning and creating reasonable zoning districts, may forbid the construction of a business building in a residential district. *Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99 (1923),

The use of the streets and highways may be regulated and restricted by the public authority in the exercise of the police power to the extent necessary to provide for and promote the safety, peace, health, morals, and general welfare of the people. The fact that such regulation results in a diminution of the value of private property should not make such regulation a taking. *Smith v. State Highway Commission,* 185 Kan. at 453. The diminution in value of Small's property cannot be treated as a taking. The State's action neither disturbed Small's control or use of his property nor restricted his right to dispose of it.

Small's second claim is that the relocation of the road resulted in a reduction of and impairment to his right of access to the clinic. He argues that by denying his right to reasonable access, the State exercised the power of eminent domain rather than its police power.

An individual whose land adjoins an existing road or other highway has a vested right to go to and return from his own land without unreasonable interference. That right includes not only the right of the owner, but also the right to have the land accessible to patrons, clients, and customers. However, such right is subject to reasonable regulation with respect to the customers. *Riddle v. State Highway Commission,* 184 Kan. 603, 610, 339 P.2d 301 (1959).

Access to and from an existing public highway may not be taken from the owner of land abutting the highway by the public without just compensation. The right of access of an abutting property owner upon a public street or highway is merely a right to reasonable, but not unlimited, access to and from the abutting property. *Ray v. State Highway Commission,* 196 Kan. 13, 15, 410 P.2d 278, *cert. denied* 385 U.S. 820 (1966). An owner of land has no right to the continuation of a flow of traffic in front of his property from an access-controlled thoroughfare and the State may abandon, reroute, or otherwise divert traffic without any liability to the owner of abutting lands. *Brock v. State Highway Commission,* 195 Kan. 361, 367, 404 P.2d 934 (1965).

Small cites *Riddle v. State Highway Commission,* 184 Kan.

603, as support for his argument that this is an eminent domain action. *Riddle,* however, was determined by a divided majority of this court and can be distinguished from the present case. In *Riddle,* the State condemned a portion of the Riddles' land for the construction of a new highway, and the plaintiffs, who ran a motel on the property, received no right of access to the new highway. The court said that, due to the diversion of traffic occasioned by the new highway and denial of direct access thereto, the use of the plaintiffs' property as a motel would be greatly curtailed. It noted that no damages would be allowed to plaintiffs for loss of a right of access, because the plaintiffs never had such a right to the new highway. In the present case, none of Small's land was condemned, and he still has access to the highway, although the route is a bit more circuitous.

Some courts have allowed damages for loss or limitation of access resulting from the conversion of a conventional street or highway into a limited-access highway. Damages are measured by the difference between the fair market value of the property belonging to the landowner before and after it is taken or damaged, less deductible benefits. See Annot., 42 A.L.R.3d 148, § 3.

In this case, however, 75th Street was already a limited-access highway. The relocation of the access road merely diverted traffic. Courts which have considered whether property owners should be compensated for diversion of traffic have uniformly denied compensation for such diversion. Kansas cases have also reached this result. *Brock v. State Highway Comm'n,* 195 Kan. 361; *Ray v. State Highway Comm'n,* 196 Kan. 13. For an indepth discussion see Annot., 42 A.L.R.3d 148, § 5.

The change of travel route does not of itself result in legal impairment of the right of ingress and egress to and from such property and a controlled access highway. Where a landowner's direct access or an access route is changed, the reasonableness of the circuity of travel caused by the rerouting of the access is considered to determine whether the impairment of access to the property is reasonable or unreasonable. The landowner is entitled to compensation for the impairment of his access where the rerouting (circuity of travel) is unreasonable.

The State has a duty to regulate the flow of traffic. Regulating the flow of traffic includes the power to direct traffic, including relocating roads and the access to roads. A proper exercise of the

police power by the sovereign does not require the payment of compensation where the change in the access route is reasonable. Small was not denied total access to his property, but only had the mode of access slightly modified; he did not suffer an unreasonable change in access. The trial court's finding that the change in access was unreasonable and a taking under eminent domain rather than an extension of the police power was incorrect.

Small's last claim is that we should adopt the rule that whenever the diversion of traffic results in a cul-de-sac, the affected landowner is entitled to compensation. In 4A Nichols on Eminent Domain § 14.15(4), it states that some courts have recognized an exception to the no damages rule where state action creates a cul-de-sac:

"A distinction must be drawn between a diversion of traffic and a destruction of access. Where all traffic in front of an owner's property is shut off, there is, in effect, a virtual discontinuance of the highway. The vacation of a part of a street which leaves property abutting on the remaining part of a street with access to the system of streets in either direction has generally been held to constitute no actionable injury. But vacation of a part of a street which destroys all access by property abutting on the remaining part of the street to the system of streets in one direction, thus putting the property on a *cul-de-sac*, has generally been held to constitute an actionable injury."

The facts in this case, however, do not fit into that exception. Small's clinic was in a cul-de-sac prior to the relocation of the highway. At that time, the only way to get to the clinic was via the frontage road which passed in front of the clinic. After the road relocation, the clinic can be reached only via the frontage road that passes behind the clinic. The clinic is still located on a cul-de-sac and is only somewhat more isolated than it was before the road relocation.

The relocation of the road has diverted traffic, but has not deprived either Small and his employees or his customers access to Small's property. Under the facts of this case, as a matter of law, the State acted under its police power. Because Small's losses were caused by the State's use of its police power, he is entitled to no compensation for a permanent taking of his property. The trial court erred when it determined as a matter of law the State was exercising the power of eminent domain and then allowed the jury to award compensation for a permanent taking of the property. The case is returned to the district court for a jury

to determine the amount of compensation due Small for the State's temporary use of his property while relocating the road.

Reversed and remanded for a new trial in accordance with our decision.