No. 79,840

CITY OF WICHITA, *Appellee,* v. McDONALD'S CORP., *et al.,*
*Appellants.*
(971 P.2d 1189)

Opinion filed January 29, 1999.

*Alan R. Pfaff*, of Kahrs, Nelson, Fanning, Hite & Kellogg L.L.P., Wichita, argued the cause, and was on the briefs for the appellant.

*Joseph W. Kennedy*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Gary E. Rebenstorf* and *Robert W. Coykendall*, of the same firm, and *Douglas J. Moshier*, of the City of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a condemnation case. Wal-Mart Properties, Inc. (Wal-Mart) appeals from an adverse condemnation award following a highway expansion project in Wichita. The court-appointed appraisers awarded Wal-Mart $128,904 in damages after completion of the project. The City of Wichita (City) appealed the award to the district court. The parties stipulated to the essential facts and asked the district court to rule as a matter of law on whether loss of access and other items of damages are proper K.S.A. 26-513(d) considerations.

The district court: (1) ruled such considerations were improper, (2) granted summary judgment in favor of the City, and (3) held as a matter of law (a) the changes in access were not unreasonable; (b) Wal-Mart had no right to continuing view by the public; and (c) there was no taking of access.

Relying solely on the City's valuation of damages ($57,800) the district court entered judgment against Wal-Mart in the amount of $71,104 (the difference between the original condemnation award of $128,904 and the City's $57,800 valuation). Finding no error, we affirm.

Our jurisdiction is under K.S.A. 26-504 (an appeal from a final order in an eminent domain proceeding).

We consider two related issues:

(1) Did the district court err by ruling Wal-Mart's expert witnesses could not consider impairment of access and view, inconvenience, change of grade, and interference with the productive use of the subject property in assessing damages under K.S.A. 26-513(d)? The answer is, "No."

(2) Are the alleged damages to Wal-Mart's property noncompensable because the City has reasonably exercised its police power? The answer is, "Yes."

## FACTS

In 1995, the City commenced a major highway project on U.S. Highway 54, better known as West Kellogg Street (Kellogg). The project involved converting Kellogg from a four-lane access-controlled highway to a six-lane access-controlled freeway. Kellogg is the major east-west thoroughfare in Wichita. Before the project, Kellogg was an access-controlled highway with two-way frontage roads on both sides.

### The Wal-Mart Property - Access Before the Project

Wal-Mart's property contains approximately 15 acres at the northeast corner of Dugan Street and the north Kellogg frontage road. A Sam's Wholesale Club (Sam's) is located there. Before the project, the property had a total of four entrances and exits. (Two driveways leading from the north Kellogg frontage road on the south boundary of the property and two driveways on the west side leading from Dugan Street to Sam's parking lot.) Dugan Street was an important access point. As a cross street of Kellogg and immediately adjacent to Wal-Mart's property, the Dugan Street intersection provided the most convenient ingress and egress from Kellogg to Sam's.

### Access After the Project

Sam's is affected by two factors. First, there is no longer access from Kellogg to Dugan Street. Kellogg is a "fly-over" at Dugan Street, rising some 21 feet above its previous grade. Eastbound traffic cannot access Dugan directly from Kellogg. Second, the frontage roads on either side of Kellogg were converted from two-way roads to one-way roads. The north Kellogg frontage road, which directly abuts Sam's, runs one way in a westerly direction. The south Kellogg frontage road runs one way in an easterly direction. As a result, eastbound motorists exiting Kellogg west of Sam's must travel on the south frontage road. From the south frontage road, motorists cannot see Sam's because Kellogg and its solid concrete supports are between the motorists and the store.

Eastbound traffic from Kellogg is required to enter Sam's by exiting off of Kellogg to the south using the ramp for Mid-Conti-

nent Drive. This exit ramp is located 4,620 feet west of Dugan Road and 1,245 feet west of Mid-Continent Drive. At the exit ramp, neither Sam's nor the Sam's sign is visible to eastbound traffic. After exiting, traffic must travel on the exit ramp to a stoplight at Mid-Continent Drive. Traffic can then cross Mid-Continent Drive and continue east on the south Kellogg frontage road. To gain entrance to Sam's, traffic must travel on the south Kellogg frontage road to a stoplight at Dugan Road. From the Dugan Road stoplight, eastbound traffic can then turn left and travel under Kellogg on Dugan to another stoplight, cross the north Kellogg frontage road and, enter Sam's property from the west.

Eastbound traffic leaving Sam's must exit to the south on the north frontage road and perform a "Texas U-turn" under the flyover at Dugan. Traffic must then travel on the south frontage road to the east and enter onto Kellogg eastbound.

Westbound traffic on Kellogg must gain entrance to Sam's by exiting off Kellogg onto the north frontage road exit ramp and traveling 605 feet. Westbound traffic can leave Sam's by exiting to the west on Dugan, proceeding South to the North frontage road, traveling 5,175 feet west on the north frontage road across two signalized intersections at Mid-Continent Drive and then onto Kellogg. Alternatively, westbound traffic can exit to the south on the north frontage road and then proceed 5,466 feet west across two signalized intersections at Mid-Continent Drive to Kellogg.

## The Parties' Contentions

Wal-Mart contends that as a result of the project: (1) motorists cannot see Sam's from certain necessary vantage points, (2) motorists will end up passing Sam's, exiting off of Kellogg, which is now a "fly over," turning around, and using frontage roads to reach the store (the turn-around adds roughly 3 additional miles in travel), (3) the "circuity of access" and other changes have severely damaged the value of its property.

Wal-Mart supports its contentions by reasoning: (1) under K.S.A. 26-513(d), loss of access, view, and change of grade are proper items of consideration in determining the market value of a given piece of property in takings cases; (2) even if the damages

in question are a result of an exercise of the City's "police power," the changes in access are unreasonable.

The City counters by observing that motorists do not have to travel any farther than they used to in order to reach Sam's. If customers exit at the proper time on the Kellogg frontage roads, the distance they travel to Sam's will be the same as before the project. The City points out that if the travelling public misses the exit once and has to double back to reach Sam's, the prospective shopper will not do so the next time. According to the City, any limitation of access is a reasonable exercise of the City's police power and not compensable.

### The Permanent and Temporary Easements on Wal-Mart's Property

Wal-Mart claims damages resulting from: (1) the temporary easements taken by the City; and (2) the permanent physical taking of a portion of Wal-Mart's land.

The temporary easements arise from the City's occupation of parcels of Sam's parking lot during the construction process. Wal-Mart argues it was subjected to excessive noise, blowing dust, and rodent infestation. At one point, according to Wal-Mart, the remainder of its parking lot was being used as a public street by consumers trying to reach stores that were inaccessible because the City had blocked off the north Kellogg frontage road. Wal-Mart submitted deposition testimony concerning these damages. However, the district court accepted the City's argument that inconveniences suffered by landowners during construction are not compensable items of damages.

Wal-Mart's second claim relates to the permanent easement condemned by the City. The City condemned two strips for the project (one approximately 15-feet wide from the south edge of the property along the north frontage road [5,057.59 square feet] and the other, 25-feet wide from Sam's parking lot along Dugan Road [6,856.26 square feet]). The parties stipulated that there were no issues as to the regularity or legality of the taking.

Three appraisals were submitted to the district court. The first of two from Wal-Mart was by F. Lee Jones, a MAI professional

appraiser. (Jones was one of the court-appointed appraisers in the condemnation proceedings.) In Jones' opinion, the loss of value to Wal-Mart as of the day of the taking was $1,300,000 (more than half of that amount was directly attributable to impairment of access). The second Wal-Mart appraisal came from Steve Lane, a site selector for Wal-Mart properties. In Lane's opinion, Wal-Mart's loss in value due to the permanent easement was nearly $1,000,000, and for the temporary easement $100,000. The City's expert was Lee Zimmerman, also a professional MAI appraiser. Zimmerman said the damages suffered by Wal-Mart totaled $58,400. Zimmerman reasons that the project has not depressed land values in the area; rather it has "made the land even more valuable."

### Procedural History

The district court ordered this case consolidated with two others to determine a common issue of law: "Whether, under the facts in these cases, access to the property remaining is a factor to be considered in determining the value of the property remaining after the taking as provided by K.S.A. 26-513."

Wal-Mart filed two motions to determine legal issues.

The first motion asked the district court to rule with respect to the actual taking of property:

"(1) Has there been an impairment of access or the creation of circuity of travel to these properties by the project?

"(2) If so, are the impairment of access and/or the circuity of travel and the impairment of visibility of the remaining properties as a result of this project factors which must be considered under K.S.A. 26-513(d), or are they noncompensable as a reasonable exercise of the police power?"

The second motion asked the district court to rule whether "the City's taking of access, view, convenience, and productivity, by means of a temporary construction easement, is compensable under Kansas law."

The parties entered stipulations of fact and requested the district court to rule as a matter of law. The City submitted an affidavit from Carl Gipson, a city engineer. Wal-Mart complains that the Gipson affidavit contains hearsay statements. The City also sub-

mitted a certified copy of city council proceedings containing discussion of the project. Wal-Mart objected to the council proceedings as evidence but did not ask the judge to rule on the objections.

The district court relied on the evidence objected to by Wal-Mart. Wal-Mart now argues that we should not consider the evidence on appeal. The disputed evidence relates to the police power justifications for the project, which we address later in the opinion.

Judge C. Robert Bell ruled in part:

"The Court further finds that West Kellogg or Highway 54 was a limited access facility before the project involved here and the law is clear that all that is required is that the landowner be given reasonable access to his property. Here, all three landowners have the same access to the abutting streets as they did before the condemnation. Therefore, the Court finds that there has been no taking of access."

After Judge Bell's ruling, the parties prepared for the pretrial conference. At the pretrial conference, Judge Timothy G. Lahey entered summary judgment in favor of the City. The parties stipulated to facts, with one exception. Wal-Mart contended that an issue of fact existed as to the value of the taking and the amount of damages to be awarded. Judge Lahey excluded the proffered testimony of Wal-Mart's expert witnesses because, "it takes into account, and is based upon, access, view, convenience, and/or productivity [which] bears no relation to the valuation of the taking and is not admissible." The only remaining evidence on damages was that submitted by the City.

## DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 60-256(c). Our standard of review is de novo. See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, Syl. ¶ 2, 863 P.2d 355 (1992). The essential facts here are documented in the parties' summary judgment submissions. Our standard in reviewing summary judgment is well established. See, e.g., *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

We first consider K.S.A. 26-513(d) and conclude that the district court did not err by excluding the testimony of Wal-Mart's expert

witnesses. (The witnesses could not consider impairment of access and view, inconvenience, change of grade, and interference with the productive use of the subject property in assessing damages.) The interpretation of statutes is a question of law. Our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

Wal-Mart argues that: (1) compensation is due under the express terms of K.S.A. 26-513(d), (2) there is no dispute as to whether a taking has occurred, (3) the amount of damages as a result of that taking is the only issue, (4) the claim for loss of access and view is linked to the permanent easements condemned by the City, and (5) damages for access and view must be calculated under K.S.A. 26-513(d).

We employ a three-step analysis. First, we set out Wal-Mart's K.S.A. 26-513 argument. We next discuss relevant case law. We then examine the term "access." Access has multiple meanings in condemnation law. Understanding the multiple meanings and the rules that apply in each instance is the key to resolving Wal-Mart's K.S.A. 26-513 damage claim.

## Wal-Mart's K.S.A. 26-513 Argument

K.S.A. 26-513 states in pertinent part:

"(a) *Necessity.* Private property shall not be taken or damaged for public use without just compensation.

. . . .

"(c) *Partial taking.* If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking.

"(d) *Factors to be considered.* In ascertaining the amount of compensation and damages as above defined, the following factors, without restriction because of enumeration, shall be given consideration if shown to exist . . . .

. . . .

2. *Access to the property remaining.*

3. Appearance of the property remaining, if appearance is an element of value in connection with any use for which the property is reasonably adaptable.

4. Productivity, convenience, use to be made of the property taken, or use of the property remaining.

5. **View**, ventilation and light, to the extent that they are beneficial attributes to the use of which the remaining property is devoted or to which it is reasonably adaptable.

6. . . . . . *[C]hanges of grade and loss or impairment of access by means of underpass or overpass* incidental to changing the character or design of an existing improvement . . . if in connection with the taking of additional land and needed to make the change in the improvement.

. . . .

10. Damage to property abutting on a right-of-way due to change of grade where accompanied by a taking of land." (Emphasis added.)

Under K.S.A. 26-513, Wal-Mart argues the measure of compensation is the difference between the market value of the entire property immediately before the taking and the market value of the property remaining immediately after the taking (citing PIK Civ. 3d 131.04, 131.05). According to Wal-Mart, loss of access, view, and change in grade are specifically named statutory factors that must be considered in determining market value after a taking.

Wal-Mart asserts that K.S.A. 26-513(d) provides direct statutory authority for the expert testimony excluded by the district court. Wal-Mart's two witnesses considered impairment of access and view, inconvenience, loss of productivity, and change of grade in assessing damages.

To emphasize its K.S.A. 26-513 contentions, Wal-Mart draws a distinction between "police power" (inverse condemnation) cases and eminent domain cases. Citing *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 524 P.2d 1165 (1974), Wal-Mart asserts that the only issue to be determined here is the amount to be paid for the taking. According to Wal-Mart, the City's "police power" analysis is "nothing but a mantra" to avoid payment under K.S.A. 26-513(d).

### The City's K.S.A. 26-513 Argument

The City approaches K.S.A. 26-513 by citing *Brock v. State Highway Commission*, 195 Kan. 361, 404 P.2d 934 (1965), and its progeny. *Brock* was not a condemnation case. No land was actually taken; thus, there is no K.S.A. 26-513 discussion in *Brock*. The City ignores, or does not understand, the primary argument advanced by Wal-Mart. The City simply launches into a discussion of case

law on the subject of rights of access, reasonableness, and the police power of the City. Although the City does not directly address Wal-Mart's K.S.A. 26-513 contention, it does rely on relevant case law.

We initially focus on three landowner non-recovery cases, *Hales v. City of Kansas City*, 248 Kan. 181, 804 P.2d 347 (1991); *Hudson v. City of Shawnee*, 246 Kan. 395, 790 P.2d 933 (1990); and *Small v. Kemp*, 240 Kan. 113, 727 P.2d 904 (1986).

In *Hales*, the City of Kansas City (City) installed raised curbs on Rainbow Boulevard that prevented motorists from making left hand turns from the Hales' parking lot onto the boulevard. The Hales had the same entrances and exits that they had before the changes, but traffic flow was altered by the City. We upheld summary judgment in favor of the City, saying "limiting the landowners' ingress and egress to lanes for southbound travel when they formerly had direct access to both the northbound and southbound lanes of traffic, whether by a median strip, one-way street, or no left turn, is a valid exercise of police power and is not compensable." 248 Kan. at 185. *Hales* did not address the issue of loss of highway access in terms of diminished market value under K.S.A. 26-513. However, the Hales received no compensation for the altered traffic flow.

In *Hudson*, the City of Shawnee took both temporary and permanent easements to widen 75th Street. Again, we did not address the issue of loss of highway access under K.S.A. 26-513 in terms of diminished market value of the property. However, in affirming the moderate award of damages in favor of the landowner, we said: "Concurrent with a compensable taking in a condemnation proceeding, the State may validly exercise the police power for traffic control and public safety, for which there can be no compensation, even if it affects the method of ingress and egress to the affected property." 246 Kan. 397, Syl. ¶ 3.

In *Small*, the State took a temporary easement on a portion of the landowner's property to relocate a frontage road. After relocation, the landowner's animal clinic was more difficult to reach. Before trial, the district court held, as a matter of law, that when the State relocated the frontage road, it was acting under its power

of eminent domain (*there was a taking of access to the highway*). The jury awarded Small $50,000 in damages. K.S.A. 26-513 was discussed. 240 Kan. at 116. We did not discuss the specific paragraphs in K.S.A. 26-513(d) relating to loss of access. However, we held that the diminution of the Small's property could not be treated as a taking because the State's action did not disturb Small's control or use of the property. 240 Kan. at 119. We reversed the district court and remanded for a new trial.

None of these three cases directly addresses the evidentiary question of what factors may properly be considered under K.S.A. 26-513(d). All three cases hold, however, that changes in traffic flow, ingress, and egress, even if concurrent with a compensable taking, are not compensable if the taking is the result of a reasonable exercise of police power.

## "Right of Access" and "Regulation of Traffic Flow" Distinguished

Terminology is important in resolving the issues here. A review of our highway condemnation case law suggests that the term "access" has been frequently misused by both litigants and courts. There is a significant distinction between "right of access" and "regulation of traffic flow."

"[R]ight of access" is traditionally defined as an abutting landowner's common-law right of access from the landowner's property to abutting public roads. Such a right is the right to reasonable, but not unlimited, access to existing and adjacent public roads. *Brock*, 195 Kan. at 370. When the government actually blocks or takes away existing access to and from property, the landowner is generally entitled to compensation. See *McCall*, 215 Kan. 390, Syl. ¶ 4 (landowner was compensated when an entrance to business was permanently closed); *Kohn Enterprises, Inc. v. City of Overland Park*, 221 Kan. 230, 559 P.2d 771 (1977).

"Regulation of traffic flow" or "circuity of access" as it is called by the parties is an entirely separate concept. An abutting owner has no right to the continuation of a flow of traffic from nearby highways to the owner's property. "Regulation of traffic flow" has also been referred to as "restricted access." See *Garrett v. City of Topeka*, 259 Kan. 896, 922, 916 P.2d 21 (1996); *Teachers Insurance*

*& Annuity Ass'n of America v. City of Wichita,* 221 Kan. 325, 335, 559 P.2d 347 (1977); and *Kohn,* 221 Kan. at 232. Restricting a landowner's access to and from the highway through the regulation of traffic flow raises police power questions. Inverse condemnation cases often stem from issues of restricted access—where a new highway is constructed, moved, or traffic is re-routed and adjacent landowners are adversely affected by the changes. See *Brock,* 195 Kan. 361; *Ray v. State Highway Commission,* 196 Kan. 13, 410 P.2d 278, *cert. denied* 385 U.S. 820 (1966); see also *Eberth v. Carlson,* 266 Kan. 726, 971 P.2d 1182 (1999) (discussing inverse condemnation, right of access, and regulation of traffic flow).

With these distinctions in mind, we now return to Wal-Mart's K.S.A. 26-513 argument. Wal-Mart claims two types of damages: temporary and permanent.

## The Temporary Easements

The City took temporary easements to complete the project, and Wal-Mart is entitled to compensation for that taking. 4 Nichols on Eminent Domain § 12E.01 (3d ed. rev. 1998). The question is whether Wal-Mart is entitled to more than the district court awarded. The answer is, "No."

Wal-Mart argues the blocking of three of the four entrances to its property, blowing dust, rodent infestation, and construction noise constituted an " 'inconvenience' and impairment of 'productivity' " under K.S.A. 26-513(d)(4). K.S.A. 26-513(d)(4) lists factors which must be taken into consideration in a partial taking. The statute references: "[p]roductivity, convenience, use to be made of the property taken, or use of the property remaining."

The City counters with *Lewis v. Globe Constr. Co.,* 6 Kan. App. 2d 478, 630 P.2d 179, *rev. denied* 230 Kan. 818 (1981). In *Lewis,* landowners complained of temporary damages due to street improvements. In denying compensation, the Court of Appeals quoted *Farrell v. Rose,* 253 N.Y. 73, 76, 170 N.E. 498 (1930):

" 'The highway is continually being dug up for . . . sewers, gas mains, repairs and like. The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives [the adjoining landowner] no right to relief, recognizing that he recoups

his damage in the benefit which he shares with the general public in the ultimate improvement which is being made.' " 6 Kan. App. 2d at 483.

*Lewis* concerned blocked access, but not dust, rodents, and construction noise. We find no Kansas case dealing with a landowner's damage claims for dust, rodents, and noise. From the record here, it is not clear whether the dust, noise, and rodent claim was peculiar to Wal-Mart or suffered by everyone during the project. The landowner has a responsibility to show that its damages are special to the property affected and not damages suffered generally. We find no such showing here.

We agree with the rationale in *Lewis.* Wal-Mart is not entitled to damages for dust, noise, and rodents under the facts here.

### Access

Wal-Mart complains the City has taken access from it. According to Wal-Mart, K.S.A. 26-513(d)(2) specifically lists "[a]ccess to the property remaining" as a factor which must be considered if shown to exist. "View" is also specifically referred to in K.S.A. 26-513(d)(5). Furthermore, Wal-Mart asserts, "Kansas Appellate Courts have held that factors which affect market value may be considered by experts in eminent domain cases, even when they are not specifically enumerated in K.S.A. 26-513(d)." (Citing *Willsey v. Kansas City Power & Light Co.*, 6 Kan App. 2d 599, 631 P.2d 268, *rev. denied* 230 Kan. 819 [1981] [where testimony of a real estate expert that public fear of power lines materially affects market value held admissible in a condemnation proceeding].)

We find Wal-Mart's contentions unavailing. Wal-Mart has misused the term "access" in crafting its arguments. The district court held that there was no taking of access as a matter of law. Wal-Mart does not challenge that ruling here. The City did not permanently close any of the entrances or exits to the property. Wal-Mart still has four entrances located as they were before the project. In addition, Wal-Mart also has the same access to the same streets it previously had. The changes that so heavily affect Wal-Mart are the changes in the direction and flow of traffic. Wal-Mart does not have the same "loss of access" claims as the landowners

in *Kohn,* 221 Kan. 230, or *McCall,* 215 Kan. 390. Thus, no "right of access" has been taken.

Wal-Mart's complaints stem from the regulation of traffic flow. Wal-Mart says the critical question is whether "restricted access and view" can be considered in determining the market value of the property for a damage award under K.S.A. 26-513(d). Wal-Mart has simply repackaged the "unreasonable use of the police power" argument. The rationale of *Hales, Hudson,* and *Small* supply a negative answer to Wal-Mart's question.

K.S.A. 26-513 does not allow landowners to recover indirectly what they could not recover directly. Otherwise, landowners who have had some small portion of their land condemned and then claim damages from changes in traffic flow but have not lost a "right of access" would recover when others who must proceed in an inverse condemnation action with the same damage claim will not. Stated differently, landowners suffering the same types of damages due to changes in traffic flow would recover in some instances, but not in others.

Wal-Mart also claims damages for loss of view, essentially arguing that because Kellogg is now a raised freeway, motorists cannot see Sam's from certain vantage points. Wal-Mart's claim finds no support as a common-law easement of view. The easement of view or "ancient lights" doctrine protected landowners from neighbors who would erect structures blocking light or air from the landowner. Kansas has never adopted the doctrine. See *Anderson v. Bloomheart,* 101 Kan. 691, 692, 168 Pac. 900 (1917). Wal-Mart's claim also finds no support as a "right to be seen." A "right to be seen" claim for damages (for example the advertising value of a location) is generally denied. See 4A Nichols on Eminent Domain § 14A.03[4] (3d ed. rev. 1998). "View" in K.S.A. 26-513(d) means view from the property.

K.S.A. 26-513(d)(2) specifically uses the term "[a]ccess to the *property* remaining" (emphasis added). When construing a statute, we should give words in common usage their natural and ordinary meaning. *International Ass'n of Firefighters v. City of Kansas City,* 264 Kan. 17, Syl. ¶ 2, 954 P.2d 1079 (1998). We will not rewrite the K.S.A. 26-513(d)(2) language "[a]ccess to the property remain-

ing" to mean "access to the highway remaining." We hold, based on case law developed since the passage of K.S.A. 26-513, "access to the property remaining" as used in K.S.A. 26-513(d)(2) refers to a "right of access"and not changes in traffic flow. Similarly, "view" does not mean view from the highway or the "right to be seen."

We are not suggesting that all of our case law is consistent when viewed with an eye toward these distinctions. However, as a general rule, where a right of access has been taken, landowners have been compensated. See *Kohn,* 221 Kan. 230; *Teachers Insurance,* 221 Kan. 325; and *McCall,* 215 Kan. 390. And, where regulation of traffic flow has been at issue, the analysis is, and always has been, one of reasonableness.

We acknowledge inconsistencies in prior cases dealing with changes in traffic flow such as *Garrett,* 259 Kan. 896, and *Riddle v. State Highway Commission,* 184 Kan. 603, 339 P.2d 301 (1959). *Garrett* will be discussed later in this opinion. As for *Riddle,* we acknowledge that it contains language favorable to Wal-Mart. Expert testimony such as that at issue here was allowed in *Riddle.* However, the use of *Riddle* as authority for Wal-Mart's claims under K.S.A. 26-513 is questionable. *Riddle* was decided by a fragmented court four years before K.S.A. 26-513 was enacted. We previously noted the divisiveness of *Riddle.* See *Small,* 240 Kan. at 120. We now point out its inconsistency with the well-established rule of reasonableness and our later case law.

Wal-Mart cannot recover for the diminution of value of its land due to the changes in flow of traffic where those changes are a reasonable exercise of the City's police power.

## The City's Police Power

Are the alleged damages to Wal-Mart's property the result of a reasonable and noncompensable exercise of the City's police power? The question of whether the regulation of traffic flow to and from Wal-Mart's property was a compensable taking was a question of law for the district court. *Hudson v. City of Shawnee,* 246 Kan. at 403. This court's standard of review is de novo.

We last visited similar takings issues in *Garrett*, 259 Kan. 897. *Garrett* required a balancing test to determine whether the City's use of the police power action was reasonable. A reasonable regulation imposed to protect the public is not a "taking in the constitutional sense because the public use is paramount and public safety is the desideratum." *Ray*, 196 Kan. at 23. Thus, the question here is one of reasonableness. If Wichita's rerouting of traffic by closing the eastbound exit at Dugan and converting the Kellogg frontage roads to one-way streets was a reasonable exercise of police power, Wal-Mart cannot recover for any diminution in value to its property. The burden of proof is on Wal-Mart. See *Hudson*, 246 Kan. at 403-04.

Wal-Mart relies primarily on three cases in support of its argument that the changes in access are unreasonable: *Garrett*, 259 Kan. 897; Mc*Call*, 215 Kan. 390; and *Teachers Insurance*, 221 Kan. 325.

In *McCall*, the landowner was compensated for a lost "right of access" and not changes in traffic flow. One entrance to McCall's gas station was permanently removed. Thus, *McCall* is not applicable.

In *Teachers Insurance*, the landowners were damaged both by "loss of access" and changes in traffic flow when the City of Wichita moved Highway 54 (Kellogg) altogether. The landowners directly abutted Kellogg and had direct access to the street. When the highway move was completed, the landowners lost direct access and were left with only a "tortuous and circuitous route" to Kellogg. 221 Kan. at 328. Motorists had to travel from 1.34 to 2 additional miles to reach the landowner's property. The City stipulated that travel to and from the property was not practical. The landowners were compensated.

In *Garrett*, the landowner was compensated when the City took a portion of her land (actually the owner deeded it to the City in exchange for the cost of some improvements, but that is immaterial here) and rerouted traffic as well. A divided court held that "[w]here the government's exercise of its police power has an economic impact on private property, a balancing test is applied to determine if the regulation of private land is too unfair or goes too

far." 259 Kan. at 910. The district court here was not required to follow the dictates of *Garrett* as Wal-Mart contends. *Garrett* is distinguishable.

The "economic impact" analysis espoused by *Garrett* is new to condemnation cases in Kansas. 259 Kan. at 910. Wal-Mart presented evidence of economic impact. According to Wal-Mart, the sales for Sam's between February 1, 1995 and October 20, 1995 were down 2.41% as compared to 1994. Customer counts were down as well.

We hold the district court did not err by refusing to consider the economic impact of the regulation of traffic flow on Wal-Mart's property. The test has always been one of reasonableness. We restrict the application of *Garrett's* "economic impact" analysis to the *Garrett* facts. *Garrett* found that the City *"failed to complete the ring road* and in failing to do so diminished the commercial value of her property. Since this was an economic taking, the applicable test is weighing the public benefit against the economic burden to the landowner." (Emphasis added.) 259 Kan. at 916. Here we have no failed road construction which diminished the value of Wal-Mart's property. *Garrett* is not to be read as changing the rationale developed by our longstanding case law that a compensable taking occurs only if the police power is unreasonable. Initially, the district court is to make a determination of reasonableness. If exercise of police power is unreasonable, a taking has occurred and a compensation award is appropriate.

In conclusion, we turn to the evidentiary complaints raised by Wal-Mart in its reply brief. Wal-Mart argues we should not consider affidavits and council proceedings submitted by the City because they contain hearsay. A reply brief is an inappropriate vehicle for raising additional issues. *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 1044, 940 P.2d 84 (1997). However, a reply brief is appropriate to rebut new material. Rule 6.05 (1998 Kan. Ct. R. Annot. 36). We resolve the ambiguous character of the reply brief's assertions in Wal-Mart's favor and address the hearsay contention.

A certified copy of the city council proceedings discussing the Kellogg and Dugan interchange appears in the record. The testi-

mony of various persons present at that meeting is not required for our determination of whether the City's actions under its police power were reasonable. Wal-Mart complains that no exit ramp was provided for Dugan itself. The council proceedings reference exit ramps for other streets.

The City also submitted two affidavits from Carl Gipson, Special Projects Engineer for the City of Wichita. The portion of the Design Concept Study attached to the second Gipson affidavit provides direct evidence of significant savings to the City and motorists as a result of the Kellogg highway project. Gipson stated from his own personal knowledge as projects manager for the Kellogg improvement that "[t]he fundamental reason for the reconstruction of Kellogg at this location was to improve safety and traffic efficiency." Further, the record reflects that one of the primary objectives for undertaking the Kellogg highway project was to provide nonstop travel from the central business district to the airport. Prior to the project, the Dugan Street intersection was the only impediment to such travel. The City has made a sufficient showing that the exercise of its police power in rerouting traffic on Kellogg was reasonable. See *McCall*, 215 Kan. at 397.

Affirmed.

ABBOTT, J., not participating.

MARION CHIPMAN, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Judge Chipman was appointed to hear case No. 79,840 vice Justice Lockett pursuant to the authority vested in the Supreme Court by K.S.A. 20-2616.