[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Facts
The appellants, Main Block Associates, John C. O'Brien and Steamboat Wharf Condominium,[1] have applied for a reassessment of damages in connection with the condemnation of certain property by the appellee commissioner of transportation (the commissioner). The commissioner has taken a temporary easement over the riparian rights appurtenant to certain upland properties owned by the appellants in the town of Groton. The condemnation was commenced pursuant to General Statutes §13a-73[2](b), as part of a bridge rehabilitation project. The appellants' applications for reassessment were filed pursuant to General Statutes § 13a-76.[3]
The commissioner filed with the clerk of the Superior Court notices of condemnation and assessment of damages on March 10, 2000. The commissioner assessed damages in the amount of $8,515 with respect to Main Block Associates, Docket No. 554230, and in the amount of $7,265 with respect to Steamboat Wharf Condominium, Docket No. 554231, and deposited those amounts with the court.
The appellants timely served and filed their applications for reassessment in the two cases on May 5, 2000 and June 20, 2000, respectively. On October 10, 2000, the court, Martin, J., referred the cases to the undersigned judge trial referee, who received evidence and viewed the properties as required by General Statutes § 13a-76.
The two cases arise from the rehabilitation of the U.S. Route 1 drawbridge spanning the Mystic River between the towns of Groton and Stonington. The subject properties are located in the town of Groton on the west side of the river. The property owned by Main Block Associates CT Page 9582 is bounded on the north by U.S. Route 1 and bounded on the east by the Mystic River. Located on the Main Block property is a four-story building containing apartments and commercial rental units. Immediately to the south of the Main Block property is the property owned by Steamboat North Condominium. Located on the Steamboat North property is the Steamboat Inn, a waterfront inn with ten overnight rooms. There is a continuous dock extending along the length of the eastern edge of the two properties.
The rehabilitation of the bridge is proceeding in two stages. The first stage ran from November 1, 2000 to April 15, 2001. The second stage will run from November 1, 2001 to April 15, 2002. The property interest taken by the commissioner is described in the notices of condemnation as a "temporary easement . . . located under, over and across those riparian rights appurtenant to Owners' land. . . ." In addition, with respect to the Main Block property, the commissioner has taken the "right of access to and from . . . U.S. Route 1. . . ." The main purpose of the taking is to allow for the mooring in the river of construction barges, which will carry some of the heavy construction equipment necessary for the project. The taking is for the two periods of actual work on the bridge only. The appellants allege that the work on the bridge has caused, and will in the future continue to cause, an impairment of the view from the Steamboat Inn, as well as noise and disrupted traffic.
In assessing the damages, the commissioner relied on the appraisals of Michael J. Corazzelli. Corazzelli concluded that the only rights being taken involve the use of the waterfront for the placement of barges and that the property has the same market value before and after the taking. He therefore determined the damages for each of the properties to be the fair market rental of the docks, or $8,515 with respect to the Main Block property, and $7,265 for the Steamboat Wharf property.
The appellants argue that the commissioner's assessment is inadequate in that it failed to take into account the effect of the taking on the remaining property. The appellants rely on the appraisal prepared by George W. Sherwood. According to Sherwood, the noise, view, and traffic problems associated with the bridge project will cause a reduction in the number of rooms rented by the Steamboat Inn, and will additionally force the inn to charge lower room rates. In addition, Sherwood's appraisal concludes that the taking will prevent the use of a planned luxury yacht. The appellants claim to be entitled to additional damages totaling $166,000 for the decrease in their property's fair market value.
 Discussion
"Under our law, a state referee sitting as a court on appeals in CT Page 9583 condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted.) Minicucci v. Commissionerof Transportation, 211 Conn. 382, 388, 559 A.2d 216 (1989).
"The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. Although the market value of the taken property is ordinarily the most appropriate measure of fair compensation . . . we have long held that other measures may be appropriate when the fair market value measure of damages does not fully compensate the owner. . . . [T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken." (Citations omitted; internal quotation marks omitted.) Alemany v. Commissioner ofTransportation, 215 Conn. 437, 444, 576 A.2d 503 (1990).
The present case involves a temporary taking. "When real property is taken by eminent domain to be devoted to the use of the condemnor for a temporary period only, it is well settled that the loss in market value of the property is not the proper criterion of value. Rather, the value of-the property for the period during which it is held by the condemnor, or the diminution in value of the use of occupancy of the property for such period, has been held to be the measure of compensation. Thus, it has been held that where the condemnor has obtained prejudgment possession of land, the condemnee must be paid the fair market value of possession of the property for the period. . . . In some cases the damages have been declared to be the rental value of the property for the period of occupation." 4 P. Nichols, Eminent Domain (3d Ed. Rev. 1990, J. Sackman B. Van Brunt eds.) § 12E.01, pp. 12E-1 through 12E-3.
The damages already paid by the commissioner have been calculated to compensate the appellants for the loss of use of the dock. Corazzelli calculated the rental value of the dock at a rate of $125.20 per foot for the two winter seasons during which work will proceed on the bridge project, or a total of $7262 for the 58 feet of dock on the Steamboat Wharf property, and a total of $8514 for the 68 feet of dock on the Main Block property. The appellants do not dispute that these figures represent the fair rental value of the dock.
The appellants maintain, however, that they are entitled to compensation because the work on the bridge has resulted in a decrease in CT Page 9584 the fair market value of their property adjacent to the dock. Sherwood's appraisal, on which the appellants rely, estimates that the bridge project will cause temporary declines in the Steamboat Inn's business, and will additionally prevent the use of the planned luxury yacht. Sherwood claims that the likelihood of these effects has reduced the fair market value of the property by $166,000. The appellants and Sherwood maintain that the projected loss of business is due primarily to the anticipated noise, traffic, and view associated with the bridge rehabilitation.
As an initial matter, the court finds that the appellants have not established that the luxury yacht would have been ready for use during the taking periods. As of the time of trial in late March, 2001, with less than a month remaining in the first taking period, the yacht was still under construction. Furthermore, at the time of trial the appellants had not yet obtained all of the department of environmental protection permits that are necessary for the mooring of the yacht. The court therefore finds that any damages claimed to arise from loss of use of the yacht are entirely speculative.
The court now turns to the appellants' other claims of damages. Our Supreme Court has "consistently departed from the fair market value measure of damages in cases of partial takings. When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes." Alemanyv. Commissioner of Transportation, supra, 215 Conn. 444. "[The] principles of Connecticut law on the assessment of damages for a partial taking reflect the judicial philosophy that just compensation requires that the condemnee shall be put in as good a condition pecuniarily as he would have been in had the property not been taken. . . . The referee need not consider elements of damage that were not a necessary, natural or proximate result of the taking." (Citations omitted; internal quotation marks omitted.) Cappiello v. Commissioner of Transportation,203 Conn. 675, 681, 525 A.2d 1348 (1987). "Where only part of a parcel is taken for a temporary period, the damages include consequential damages to the remainder. . . . To be compensable, however, the consequential damages must result from the temporary easement and not from the activity of the condemnor elsewhere in the area." 4 P. Nichols, supra, § 12E.01, pp. 12E-6 through 12E-7.
In his appraisal and testimony, Sherwood has not provided any basis for concluding to what extent the problems with traffic, noise, and the view from the inn are the result of the taking itself, rather than the bridge rehabilitation project generally. The authorities discussed above make it clear that damages are noncompensable unless they are caused by the CT Page 9585 taking of the easement itself, rather than the commissioner's activities elsewhere in the area. No evidence has been provided to support a conclusion that the effects projected by Sherwood are attributable to the use of the appellants' dock, rather than construction activities on the bridge itself or elsewhere in the area.
The courts of other jurisdictions have been presented with similar situations. In Akullian v. State, 74 Misc.2d 142, 344 N.Y.S.2d 226 (Ct. Cl. 1973), as in the present case, the state took a partial temporary easement for use in conjunction with a highway improvement project. The court stated: "Claimant's appraiser in his approach to establish a rental value for the temporary easement developed a before rental value for theentire property at $400 per month. Then, because of what he attributed to the effects of the temporary easement, he developed a $300 per month rental value for the remainder of the property for the duration of the temporary easement. . . . In the Court's view, there is a fallacy in Claimant's appraiser's approach here; he has included in his thought process and approach all of the adverse effects and results of the construction work, detours, etc., that occurred on the original highway bed and on the direct taking strip as well as on the temporary easement strip. . . . He did not allocate portions of his $100 rental difference to any of these three areas; rather, he lumped them all together and ascribed the total effect to the temporary easement. In this Court's view, this involves the inclusion of temporary effects of highway construction work and non-compensable damages. The Court is unable to adopt this approach in arriving at a rental value for the temporary easement. . . . [A]ll of the effects of the construction work, which were mostly not attributable to the temporary easement itself and the use thereof, were involved. The Court finds that the Claimant could have advanced the same loss in rental value even if the temporary easement had not been taken. In other words, the highway work and related temporary effects are what caused his claimed diminution in rental value and this is not compensable." (Emphasis in original.) Id., 231-32.
In City of Wichita v. McDonald's Corp., 266 Kan. 708, 971 P.2d 1189
(1999), the plaintiff city, for the purpose of completing a highway expansion project, took a temporary easement over certain portions of the parking lot of a Wal-Mart store. During the project, three of the four entrances to the property were blocked, and Wal-Mart also experienced blowing dust, rodent infestation and construction noise. The district court awarded damages for the taking of the temporary easement, but did not award damages for dust, rodents or noise. The Supreme Court affirmed, holding: "The question is whether Wal-Mart is entitled to more than the district court awarded. . . . From the record here, it is not clear whether the dust, noise, and rodent claim was peculiar to Wal-Mart or suffered by everyone during the project. The landowner has a CT Page 9586 responsibility to show that its damages are special to the property affected and not damages suffered generally. We find no such showing here. . . . Wal-Mart is not entitled to damages for dust, noise, and rodents under the facts here." Id., 1197-98.
The court finds that the appellants have not demonstrated that the noise, traffic, and view problems in the present case are related to the temporary easements, rather than the bridge construction project as a whole. Consequently, it appears that the alleged damages "were not a necessary, natural or proximate result of the taking." Cappiello v.Commissioner of Transportation, supra, 203 Conn. 681. Furthermore, even if these problems did result in some measure from the easements over the appellants' property, they were the type of effects that would reasonably be contemplated by parties to a lease of a dock for the mooring of barges. The court therefore finds that the damages awarded by the commissioner, based on the rental value of the dock, provide adequate compensation for the taking of the easements.
 Conclusion
The appellants have not demonstrated that the claimed damages are the result of the taking of easements over the appellants' property rather than the construction project as a whole. Furthermore, the commissioner has already awarded the appellants damages for the fair rental value of the dock over which the easements were taken. The court therefore concludes that the appellants are not entitled to additional damages.
Judgment is hereby entered in both cases for the appellee commissioner of transportation.
D. Michael Hurley Judge Trial Referee